State *vs.* WALTER K. PULLEN *d.b.a.* T. S. HOSE ASSOCIATES.

JUNE 14, 1937.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CONDON, J.   This is a petition brought in the superior court by the state, under the provisions of general laws 1923, chapter 273, sec. 16, to restrain the sale of securities by the respondent, because of his failure to register, as

provided by sec. 3 of said chapter, with the division of banking and insurance as a broker or salesman of securities. The petition was heard by a justice of that court and he decided that a restraining order should issue and continue in effect until such time as the respondent should register as provided by law. A final decree in accordance with said decision was duly entered and from this decree the respondent has appealed to this court.

It was stipulated at the hearing in the superior court that the respondent was a salesman engaged in the sale of oil royalties within this state and that he was not registered with the division of banking and insurance. It appeared from the evidence that these oil royalties were founded upon a certain lease agreement, whereby the owner of certain lands in Texas leased the same to an oil company "for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, power stations and structures thereon to produce, save and take care of said products."

This lease was declared to be for a definite term of years "and as long thereafter as oil or gas, or either of them is produced from said land by the lessee." The lessee covenanted thereunder with the lessor "To deliver to the credit of the lessor, free of cost, in the pipe line to which . . . may connect...wells, the equal one-eighth part of all oil produced and saved from the leased premises." As to the gas produced, the lessee further covenanted as follows:

"2nd. To pay to lessor, as royalty for gas from each well where gas only is found, while the same is being sold or used off of the premises, one-eighth of the market price at the wells of the amount so sold or used, the lessor to have gas free of charge from any gas well on the leased premises for all stoves and inside lights in the principal dwelling house on said land during the time by making lessor's own connections with the well at lessor's own risk and expense.

"3rd. To pay to lessor as royalty for gas produced

from any oil well and used by lessee for the manufacture of gasoline, one-eighth of the market value of such gas. If such gas is sold by lessee, then lessee agrees to pay lessor, as royalty, one-eighth of the net proceeds derived from the sale of said casinghead gas at the wells."

A mutual covenant expressly permitting assignment of the respective estates of the lessor and lessee was also made, but for such assignment to be binding upon the lessee it had to be furnished with a written transfer of such assignment or a certified copy thereof. In accordance with the terms of this lease, the lessor proceeded to sell to purchasers a fractional share of his rights reserved in such oil and gas lease evidenced by what is called a "Mineral Deed" in the following form:

"The State of Texas,
County of        } Know All Men By These Presents:
That ............................................
.............hereinafter called Grantor, or........
County, Texas, for and in consideration of the sum of
............Dollars ($.......) cash in hand paid
by .................................... hereinafter
called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto the said Grantee, an undivided
........interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in..............
County, Texas, to-wit:

(Real Estate Description)

Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

Said land being now under an oil and gas lease executed in favor of ..........................., it is

understood and agreed that this sale is made subject to the terms of said lease and/or any other valid lease covering same, but covers and includes ............ of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, in so far as it covers the above described land.

It is understood and agreed that ............ of the money rentals, which may be paid, on the above described land, to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said Grantee; and, in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event, Grantee shall own .......... of all oil, gas and other minerals in and under said lands, together with a like ........ ( ) interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands.

To Have And To Hold the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee herein, and Grantee's successors, heirs and assigns forever; and Grantor does hereby bind Grantor's successors, heirs, executors and administrators, to warrant and forever defend all and singular the said property unto the said Grantee herein, and Grantee's successors, heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof...................................

      Witness ......hands this the ........day of ......................., 193.......

      ......................

      ......................"

Accompanying such deed was a so-called "Transfer Order" substantially as follows:

"Humble Oil & Refining Company

Transfer Order

To Humble Oil & Refining Company:

The undersigned has assigned as of this date, as indicated below, a 1/400th of 1/8th interest in oil produced from that certain property situated in Austin County, Texas, and known and described as follows:

(Real Estate Description)

Effective at 8:00 a.m. on 1st Day of May 1930, you are hereby requested to give credit for oil received on account of said interest so transferred, to the assignee or assignees, as follows:

| Credit To | Division of Interest | P. O. Address |
|---|---|---|
| Bertha A. Ingham | 1/400th of 1/8 | 000 X Street Stamford, Conn. |

Witness:

John Doe (signed)          T. S. Hose (signed)

The undersigned, whether one or more, assignee or assignees above named, each for himself certifies and guarantees that he is the legal owner of the interest hereinabove indicated as transferred to him, and authorizes Humble Oil & Refining Company, or any person or Corporation designated by it until further written notice, to receive oil pursuant to above transfer, hereby agreeing to all terms and conditions of the division order heretofore in force.

Witness

John Doe (signed)     Bertha A. Ingham (signed)"

These two documents constitute the written evidence of the rights which the respondent desires to sell in this state, and which the division of banking and insurance has decided are securities within the meaning of that word as used and defined in section 1 (c) of chap. 273, as follows:

"The term 'security' or 'securities' shall mean and include the currency of any government other than the United States, in whatever form the same may be dealt in, any bond, stock, treasury stock, note, debenture, certificate of interest in a profit sharing agreement, certificate of interest in an oil, gas or mining lease, evidence of indebtedness, or any form of commercial paper, transferable certificates of interest or participation, or transferable shares, or similar evidences of beneficial interest issued by any person as defined in sub-division (b) of this section."

The respondent contends that such documents are written evidence of an interest in realty and therefore not within the meaning of the language of the section next-above quoted. He admits that this section has not heretofore been construed to apply only to personal property and not to realty, but he argues that it should be so construed because it has been held by this court, in construing another statute, (G. L. 1923, chap. 59, secs. 10, 11), that the word "security" did not include certain land trust certificates as such certificates were muniments of title to an equitable interest in real estate in Ohio. *Narragansett Mutual Fire Ins. Co.* v. *Burnham,* 51 R. I. 371, 154 A. 909. In that case the court was considering a statute relating to the taxation of intangible personal property, and it was important to determine the true nature of these trust certificates as either realty or personalty. Finding that they were muniments of title to real estate situated outside of this state, the court held them not to be a security taxable under the above statute. That is all the case holds.

The respondent also cites a Texas case which holds the lessor's interest in an oil and gas lease, substantially the same as the one before us in the instant case, to be an interest in real estate. *Waggoner Estate* v. *Wichita County, Texas,* 273 U. S. 113, 3 F. (2d) 962. That case was concerned with the question of the right to tax such interest as personalty in a county different from the county in which the leased land was situated. The case is of no assistance in

solving the problem here, except to establish the point that this so-called oil royalty which this respondent seeks to sell in Rhode Island is treated as real estate, or at least an interest in realty in Texas. The respondent has cited no case from a court of last resort in Texas or in any other state which holds that a "mineral deed", such as the one here, is not a security within the meaning of a statute similar in content and purpose to our statute, regulating the sale of securities.

The respondent has, however, cited a case from an inferior court in the state of Pennsylvania, which does hold that way. *T. S. Hose* v. *Pennsylvania Securities Comm.*, 38 Dauphin 146. In that case the court held squarely, overruling a decision of the Pennsylvania Securities Commission, that an interest in an oil and gas royalty, such as in the instant case, being, according to the law of Texas, an interest in realty was not a "security" within the meaning of the Pennsylvania Securities Act. The court apparently rested its decision on that ground, and cited *Waggoner Estate* v. *Wichita County, supra* and *Taylor* v. *Higgins*, 2 S. W. (2d), Texas Civ. App. 288, as authority for the statement that such oil royalties are deemed to be realty in Texas. Apparently, also, it was fully satisfied that the Pennsylvania Securities Act did not apply to interests in realty.

We are not advised whether that court is the court of last resort on appeals from decisions of the securities commission of Pennsylvania, but whether it is or not, we are not persuaded that its decision thus limiting the scope of the Pennsylvania statute is the correct one for us to follow in construing the language of our statute. On the contrary, in view of our conception of the purpose sought to be attained by our statute, we are not disposed to limit it by a narrow construction, but rather we are inclined to give it a reasonably broad construction in order to effectuate the ends which the statute is plainly designed to promote.

In construing our statute, (G. L. 1923, c. 273) we are

not controlled by what was said in *Narragansett Mutual Fire Ins. Co.* v. *Burnham, supra,* when the court was construing a wholly different subject-matter, namely, taxation. From the viewpoint of taxation, it is of considerable importance whether the property which is assessed is realty or personalty. In the regulation of the sale of investments or investment contracts, the technical nature of the interest sold, whether realty or personalty, is of slight consequence, if any. The design of our statute is to protect the public from fraud and misrepresentation in the investment of its funds in a wide variety of enterprises, regardless of the technical form in which shares in such enterprises may be offered for sale. It is paternalistic in purpose and seeks to save the too credulous investor from his own lack of acumen in detecting the false and fraudulent nature of schemes devised to lure his money away from him with scant hope of its return, or of its investment in such schemes ever yielding an income. In a word, the main objects of the statute are to force the seller to tell the truth about the security which he has for sale before he is permitted to offer it to the public, and to insure to the careful investor authentic factual information, upon which he may rely in purchasing securities offered for sale.

In this state that statute provides some measure of regulation and control, at least of the open securities market. To some extent also it reverses the old rule of the law merchant and warns the seller of securities that he must beware what he offers for sale in that market. It does not impose upon the seller the liability of an insurer of the security which he offers for sale, but merely requires him to make a disclosure of the nature of the security and the substantial facts concerning it and its sponsors in order to enable the division of banking and insurance to determine its entitlement to registration in this state. The extent of the information required to be filed concerning the security to be offered for sale is left very largely to the discretion of the division.

In construing this statute, we should, in view of the evil it seeks to eradicate and the public policy it is designed to promote, consider it primarily and essentially as remedial in its nature, and give to it a liberal construction. *Kneeland* v. *Emerton*, 280 Mass. 371, 183 N. E. 155. The respondent contends that the penal provisions of the statute demand that it be given a strict construction, but it may be observed in answer to that contention that there is another provision of the statute which is preventative in its nature rather than penal, and that the instant proceeding is brought under this provision (see 16).

Where a widespread evil, manifesting itself in an almost infinite variety of cunning schemes, exists by reason of which the public is victimized, and where the legislature enacts a statute solely designed to remedy that particular evil, a broad construction should be given the statute. *People* v. *Federated Radio Corp.*, 244 N. Y. 33, 154 N. E. 655. Moreover, there is sound reason and eminent authority for holding a statute remedial under one section of it, though it is penal under another. *Bolles* v. *Outing Company*, 175 U. S. 262, 20 Sup. Ct. Rep. 94, 44 L. Ed. 156. Where, as here, the statute is preventative in character as well as penal and affords a prospective seller a full and fair opportunity to have his right to sell a certain security judicially determined, there is an added reason for a liberal construction of the preventative section, in order to effectuate the purposes of the statute.

The instant proceeding, in accordance with the provisions of sec. 16, follows the course of equity and is brought to determine the right of the respondent, without being registered as a broker or salesman of securities, in accordance with the provisions of sec. 3 of said chap. 273, to sell oil and gas royalties, growing out of or founded upon an oil lease in the state of Texas. It is not a criminal proceeding, to enforce the penalties prescribed for violation of the statute, but an equitable proceeding to restrain the respondent from selling said royalties, if they are found to

be securities within the meaning of the statute. A strict construction of the statute is not required then in this instance.

We cannot agree with the contention of the respondent that the sale of these "Mineral Deeds" constitutes merely the sale of an interest in land in Texas. It is difficult to read these documents and not come to the conclusion that, notwithstanding the legal verbiage in which the transaction is clothed by such documents, they are, nevertheless, securities evidencing an investment by the purchaser in a share of oil produced and brought to the surface by the lessee of the land described therein. Technically they may also evidence an interest in realty in Texas, but such interest, it seems to us, is an unsubstantial interest, because, by the very terms of these documents, the purchaser thereof is actually precluded from the enjoyment of that interest in any other effective way than by receiving his proportionate share of the value of the oil produced and brought to the surface by the lessee. In other words these documents are primarily evidence of a share in oil produced under an oil lease and only incidentally evidence of a transfer of an interest in realty. While they may be instruments conveying realty interests, according to the law of the state of Texas, that is not a good reason for holding they are not also securities, according to the law of this state regulating the sale of securities.

These documents, upon close examination, clearly present a situation which demands that the realities prevail over the merely technical effect of the legalistic form of the documents themselves. Really and actually behind the form of a conveyance of an interest in land set out in these documents is an investment contract, and it is peculiarly the kind of an investment contract which lends itself readily to the perpetuation of the evil which the securities act is designed to eradicate.

We do not mean to say that this particular investment is not worthy of the investor's confidence or that it is fraudu-

lent and of doubtful value. On those matters, we express no opinion, and our decision of the question before us is not to be construed in any manner as reflecting adversely in any way on the oil royalties which the respondent has for sale. All that we are concerned with here is whether or not they are securities within the meaning of our statute which requires those who would engage in the sale of securities in this state to register with the division of banking and insurance as brokers or salesmen of securities.

What we have said is directed solely at the question whether the "Mineral Deed" and its attached transfer order is a security. Our statement is made by way of answer to the respondent's contention that those documents evidence a conveyance of an interest in land and are, therefore, not a security. By this contention, the respondent seeks to bar the division of banking and insurance from applying the provisions of said sec. 3, chap. 273, to him in his business of selling these oil royalties in this state. The answer to this contention lies in looking behind the form in which the respondent seeks to sell these royalties to the substance of the transaction itself. We are unwilling by our construction of our statute to make the mere form of such a contract a barrier to the carrying out of the will of the legislature to protect the public welfare, as we have found it expressed in chapter 273. It would be a grave misfortune if, by slavish adherence to form and blind disregard of substance, the declared public policy of the state in the regulation of the sale of securities was thus nullified by this court. *People* v. *Reese,* 29 P. (2d) 450, (Cal.); *Securities & Exchange Commission* v. *Wickham,* 12 F. Supp. 245.

The trial justice found, upon a liberal construction of the statute, that these royalties were securities within the meaning of section 1 (c), and said: "It is quite clear from the evidence before the Court that whatever may be the legal technicalities in respect to title or the exact character of the conveyance necessary to effect a change of title, that

what is sold to the public is an assignable, transferable right to obtain a certain share of a royalty in oil produced by the lessee of land, and a right created by a lease between the lessee and the lessor giving the lessor or his assigns a right to call on the lessee for so much oil by him produced." We think this finding is correct. That these oil royalties are, under the law of Texas, deemed to be real estate, and that said "Mineral Deeds" are instruments conveying an interest in realty, is of no importance in our consideration of them in connection with the securities act of this state. The mere fact that this deed and this transfer order are treated in Texas as instruments conveying an interest in land does not preclude their being considered in this state also as securities, evidencing an investment in an oil development project.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*John P. Hartigan,* Attorney General, *John E. Mullen,* 4th Asst. Attorney General, for State.

*Littlefield, Otis & Knowles, James B. Littlefield,* for respondent.