**284 A.2d 590.**

STATE EX REL. ROBERT SCOTT *vs.* ARAM K. BERBERIAN.
DECEMBER 17, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J.  This is a complaint and warrant charging that the defendant did "* * * wilfully fail and refuse to comply with the lawful order of Officer Thomas Lombardo, a Westerly, Rhode Island Police Officer, invested

by law with authority to regulate control and direct traffic, in violation of Title 31, Chapter 12, Section 3, of the General Laws of Rhode Island 1956 as amended."[1]  The case was tried to a jury in the Superior Court, which subsequently returned a verdict of guilty.  From that verdict the defendant has prosecuted a bill of exceptions to this court.

The evidence discloses that on October 18, 1968, about 9:15 a.m., defendant parked a motor vehicle at the intersection of High and Broad Streets in the town of Westerly. Officer Lombardo testified without contradiction that he was patrolling that area dressed in the usual uniform of a police officer, wearing a badge on his chest and a shield on his cap which identified him as a police officer.  He further testified that he asked defendant not to park his car in the middle of the street or it would have to be towed away.  The defendant replied that he was making a delivery and started to walk away.  Officer Lombardo then proceeded to a police booth to call for a tow truck to have the car removed from the highway, and defendant thereupon went back to his car and drove away.

Later that morning, about 11 a.m., defendant returned to the same intersection and once again parked his car, according to Officer Lombardo, in the middle of the street and proceeded to make a delivery.[2]  The officer testified that he told defendant that unless he moved the car, he would be placed under arrest, to which defendant replied: "Go ahead and place me under arrest."  The officer thereupon took defendant into custody and subsequently charged him with a violation of the above-mentioned §31-12-3.

---

[1]Section 31-12-3 reads as follows: "No person shall wilfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic."

[2]The defendant testified that he had parked his vehicle "in the middle of the intersection of those two streets."

The defendant contends that §31-12-3 was enacted in violation of art. I, sec. 19, and art. IV, sec. 2, of the Rhode Island constitution and of art. XIV, sec. 1, of amendments to the United States Constitution in that it is arbitrary, capricious, and constitutes an unlawful delegation of legislative power.[3] An examination of defendant's brief, however, is persuasive that he is arguing primarily that the section is unconstitutional by reason of vagueness and indefiniteness. We do not agree.

The test for determining the definiteness of a statute within the contemplation of the constitution is aptly stated in *Tinsley* v. *City of Richmond,* 202 Va. 707, 714, 119 S.E.2d 488, 493 (1961). There the court said that an ordinance or a statute of a regulatory nature must be clear, certain, and definite so that the average man may with due care after reading the same understand whether or not he will incur a penalty by his action. If the legislation is not of this character, it is void for uncertainty.

In this state we have adopted the same criteria for the determination of definiteness in a constitutional sense. In *State* v. *Jamgochian,* 109 R. I. 17, 279 A.2d 923 (1971), we noted that regulatory legislation is not violative of the constitutional requirement for definiteness and certainty when "* * * on its face, [it] is certain rather than vague, contains ascertainable standards, is not so broad as to condone punishment of a person for conduct which is constitutionally permissible and is so definite and specific that a person of common understanding, upon a reading, may readily ascertain whether or not what he intends to do is forbidden." This view is consistent with the rule on defi-

---

[3]It would appear that defendant's reference to art. I, sec. 19, is inadvertent, that section providing: "No soldier shall be quartered in any house, in time of peace, without the consent of the owner; nor, in time of war, but in a manner to be prescribed by law." We are unable to perceive anything in §31-12-3 that could be violative of said art. I, sec. 19.

niteness laid down in *Coates* v. *City of Cincinnati,* 402 U. S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), and *Shuttlesworth* v. *City of Birmingham,* 382 U. S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965).

We are of the opinion that a reasonable man reading this statute would be made aware of what he is required to do and the circumstances in which he is required to do it. It was enacted as part of a statutory declaration of the scope of the application of traffic regulations and clearly was intended to have its application limited to the control and regulation of traffic. It requires that one shall not willfully refuse to comply with the lawful order of a police officer who has been legally empowered to direct, control, and regulate traffic.

Its provisions are certain and definite, pointing with reasonable specificity to the prohibited conduct, and it is so written that a man of common understanding can ascertain therefrom what he may and may not do. *State* v. *Jamgochian, supra.* Its limitations on the authority of the officer to make an arrest are quite clear. It does not leave the question of an arrest to the whim of the police officer or to the moment-to-moment opinions of a policeman on his beat. In such circumstances it is our conclusion that the statute is neither so indefinite nor so arbitrary of application as to be constitutionally void.

The defendant contends also that the officer, in taking him into custody, acted in excess of the authority conferred upon him by §31-12-3. He argues, first, that the officer has no authority under the statute to order the removal of an illegally parked vehicle unless such vehicle is obstructing vehicular or pedestrian traffic. We cannot agree. Nothing in the statute limits the authority of the police officer to issue an order that will forestall the obstruction of traffic, nor is there anything that warrants our finding that a standing vehicle, illegally parked or otherwise, is

not traffic within the purview of §31-12-3. To hold otherwise would be to defeat the obvious purpose of the statute, which is to prevent congestion of traffic, a result likely to flow from the obstruction of the highway by a standing vehicle.

He argues further that the police officer was not engaged in the control, direction, and regulation of traffic and, therefore, was not a police officer contemplated in §31-12-3. We see no merit whatsoever in this contention. The statute does not prescribe that the officer must be engaged exclusively in the control or direction of traffic or that he must be specifically assigned to such duty. The evidence shows that the officer was in uniform and was on patrol, and in these circumstances, in our opinion, he had authority to control and regulate traffic.

The defendant further contends that his prosecution in the instant case for a violation of §31-12-3 deprives him of his fourteenth amendment right to the equal protection of law. During trial he made an offer of proof, in which he contended that he could adduce evidence to the effect that the police officer, in ordering him to move his vehicle, ignored the presence of two other vehicles parked in the same area. The defendant argues that in not prosecuting the operators of the other vehicles the officer acted arbitrarily and violated his right to equal protection.

However, while the proof offered would tend to establish that other vehicles were illegally parked in the same area, it would not establish that the operators of the other parked vehicles had willfully refused to comply with an order of the officer to remove them. It is our opinion, then, that the offer of proof was insufficient in that it fails to disclose in reasonable detail the admissible evidence on which he would rely. *Manning* v. *Redevelopment Agency*, 103 R. I. 371, 238 A.2d 378 (1968). The defendant is urging that he was deprived of equal protection

by reason of his prosecution for violating §31-12-3, and the question before us is whether this enforcement of §31-12-3 constituted an invidious discrimination against defendant and deprived him of equal protection.

In *State* v. *Pinsince,* 105 N. H. 38, 41, 192 A.2d 605, 607 (1963), the court held: "The respondents' claim that they were deprived of equal protection of the laws because other persons on the Main Street were not arrested at the same time is not sustainable. The record falls short of establishing that others subject to the Directive failed to comply." We are persuaded that whether the prosecution of a defendant for a particular offense amounts to a deprivation of equal protection basically depends upon a showing that, of several violators of the same ordinance or statute, only the defendant has been prosecuted. In other words, the invidious discrimination flows from the prosecution of a particular defendant for an offense arising out of a statute or ordinance that was violated by others who were not prosecuted therefor. *United States* v. *Maplewood Poultry Co.,* 320 F.Supp. 1395 (1970); *United States* v. *Rickenbacker,* 309 F.2d 462 (2d Cir. 1962); *Moss* v. *Hornig,* 314 F.2d 89 (2d Cir. 1963).

The defendant's offer of proof is insufficient for another reason. It is well settled that the mere fact that other offenders have not been prosecuted does not constitute a denial of due process or equal protection; intentional or purposeful discrimination must be shown. *Snowden* v. *Hughes,* 321 U. S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). In *Moss* v. *Hornig, supra,* the court said at 92, relying on *Snowden* v. *Hughes, supra*: "To show that unequal administration of a state statute offends the equal protection clause one must show an intentional or purposeful discrimination."

Consequently, if we were to accept defendant's offer of proof as fully proved, that he was prosecuted for a violation of the statute, §31-12-3, while others who committed

the same offense had not been prosecuted, it is clear that he has failed to allege or offer proof that the officer acted purposefully and intentionally to discriminate against him, a showing which is essential to establishing a denial of equal protection.[4]

We turn to defendant's contention that the state is estopped from prosecuting him in the instant case because it has successfully prosecuted him for the performance of the act out of which the instant prosecution springs. We assume that he is contending that his prosecution for disobeying the lawful command of the police officer as required in §31-12-3 is invalid because the charge arose out of the same criminal transaction as another charge, unlawfully parking in an intersection, §31-21-4(3). In our opinion, the weight of authority is to the contrary.

In *Blockburger* v. *United States*, 284 U. S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), the Court held that "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." It should be clear that to establish a violation of §31-12-3, the state was required to prove not only that defendant was parked illegally but also that when he was directed to remove the illegally parked vehicle by a police officer authorized to direct traffic, he willfully refused to do so.

In *Gore* v. *United States*, 357 U. S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Court reaffirmed the *Blockburger* decision and also indicated that the court should consider the policy and legislative intent underlying the various provisions to determine if they constitute separate

---

[4]The defendant's plea of estoppel, in our opinion, likewise fails to allege grounds that would establish the purposeful and intentional discrimination against the defendant.

violations or different names for the same violation. *Id.* at 388-89, 78 S.Ct. at 1282-83, 2 L.Ed.2d at 1407-08. It seems evident that in §31-21-4(3) the Legislature intended to preserve the orderly flow of traffic, while §31-12-3 is designed to insure compliance with lawful orders of police officers whose duty it is to enforce restrictions such as §31-21-4(3).

The defendant relies on *Ashe* v. *Swenson,* 397 U. S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), in support of his argument. Neither the majority opinion nor Justice Brennan's concurring opinion, which defendant has quoted out of context, supports his contention. In *Ashe* v. *Swenson* the defendant was accused of participating in the robbery of six individuals. The defendant Ashe was first tried for robbery of one of the victims and was acquitted. In a subsequent prosecution for the robbery of another victim, the defendant was convicted. In reversing the conviction of Ashe in the second trial, the Court held that the doctrine of collateral estoppel, an essential element of the fifth amendment's protection against double jeopardy, was also binding in state prosecutions through the fourteenth amendment.

The Court's holding in *Ashe* does not support defendant's contention. In the first place, the doctrine of collateral estoppel is of no use to a defendant who has been convicted in a previous prosecution, but rather can be employed by a defendant who has been acquitted in an earlier prosecution and seeks to bind the state by the jury's earlier finding of no guilt. *Ashe* v. *Swenson, supra,* at 459, 90 S.Ct. at 1202, 25 L.Ed.2d at 484, n. 13 (Brennan, J., concurring); Comment, *Twice in Jeopardy,* 75 Yale L. J. 262, 286 & n. 114 (1965). Second, both of the charges against this defendant were heard together. It was only upon appeal that the two charges were heard separately. The entire thrust of Justice Brennan's concurring opinion in *Ashe* is that all charges

arising out of the same criminal transaction must be tried together to prevent " "* * * embarrassment, expense and ordeal and compelling [the defendant] to live in a continuing state of anxiety and insecurity * * * ' *Green* v. *United States,* 355 U. S. 184, 187 (1957)." 397 U. S. at 450, 90 S.Ct. at 1197-98, 25 L.Ed.2d at 479 (Brennan, J., concurring). Both of the charges against this defendant were tried together just as Justice Brennan would require. It is clear that defendant has failed to consider the context of the *Ashe* case and has attempted to apply isolated language from the opinion to support his appeal, language which in the context of the *Ashe* case does exactly the opposite.

The defendant also contends that the trial justice erred in denying his motion that a witness, the Town Clerk of the Town of Westerly, be ordered orally by the court to go to the Town Hall and to return, after a recess, to the court with certain records that apparently were related to town council action concerning the regulation of parking in Dixon Square in the town of Westerly. The court refused to so direct the witness and suggested that, if defendant wanted records concerning the town council's action, he should issue a subpoena duces tecum requiring the witness to produce the desired records.

The question here raised is whether it was prejudicial error on the part of the court to deny defendant's motion that the court orally direct the witness to obtain the records. We think not. It is clear that defendant's motion was directed to the discretion of the court. The defendant cites no authority holding that the denial of such a request was an abuse of judicial discretion but argues only that, the witness being in court, there was no necessity for issuing a subpoena duces tecum to obtain the record. In *Central Soya Co.* v. *Henderson,* 99 R. I. 388, 208 A.2d 110 (1965), we said that motions for the issuance of a subpoena duces tecum are addressed to the discretion of the court. In that case we

noted clearly that not only must the documents sought to be produced be identified with reasonable certainty but the motion must also reasonably show that the records or documents sought contain evidence relevant and material to the issue at trial. There we noted that vague and uncertain requests in a subpoena duces tecum could become very burdensome to a witness and the records produced be of no reasonable use to the defendant at the trial.

It cannot be doubted but that the oral order sought by defendant would have fallen far short of the requirement of certainty in a subpoena duces tecum in that it would not inform the witness with reasonable certainty of the particular records that were to be produced. Clearly, it was within the discretion of the trial justice to protect the witness from the burdensome difficulties that would be encountered were she confronted with a vague, indefinite oral direction to produce the records of the town council action contemplated. In denying the motion, the court also suggested to defendant that he resort to the proper procedure for the procuring of such records, that is, issuing a subpoena duces tecum specifically identifying the records wanted and establishing their relevance and materiality on the issue in the case. In other words, he denied defendant's motion for the oral order and informed him he had recourse in the premises to the use of a subpoena duces tecum.

In these circumstances we cannot say that the denial of defendant's motion by the trial justice constituted an abuse of his judicial discretion. The defendant obviously was not prejudiced, inasmuch as by the issuance of a subpoena duces tecum he could have obtained the desired records. In our opinion, the denial of this motion was not error.

Lastly, we note that the defendant contends that the admission of the testimony of Officer Lombardo concerning his appointment and qualification as a police officer violated the best evidence rule, so called, and its admission

constituted reversible error. In *State* v. *Ramsdell,* No. 533-Ex., filed December 17, 1971, this identical contention was rejected by this court. We, therefore, hold that no error inhered in the admission of Officer Lombardo's testimony as to his status as a police officer.

All of the defendant's exceptions are overruled, and the case is remanded to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Henry Gemma, Jr.,* Special Asst. Attorney General, for plaintiff.

*Aram K. Berberian,* defendant, pro se.