CITY OF WARWICK

v.

ALMAC'S, INC.

No. 81–180–Appeal.

Supreme Court of Rhode Island.

March 19, 1982.

Dennis J. Roberts, II, Atty. Gen., Stephen Lichatin, III, Asst. Atty. Gen., William J. Toohey, City Sol., David D. Prior, Asst. City Sol., Warwick, for plaintiff.

Armstrong, Gibbons, Lodge & Kinder, Joseph G. Kinder, Wayne M. Kezirian, Selya & Iannuccillo, Anthony G. Iannuccillo, Richard L. Patz, Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Lynette Labinger, Edwards & Angell, John B. Rosenquest, III, E. Howland Bowen, Providence, Alan T. Dworkin, Ltd., Charles M. Koutsogiane, Robert M. Brady, Cranston, Tillinghast, Collins & Graham, Mark A. Pfeiffer, Providence, Revens & DeLuca, Ltd., John C. Revens, Jr., Warwick, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal from a Superior Court judgment dismissing a complaint brought by the plaintiffs, the State of Rhode Island and the city of Warwick (the city), against the defendants, certain retail establishments[1] located in the city of Warwick.

---

1. The defendants are Almac's, Inc.; Lee's Superstore, Inc.; The Outlet Co.; The May Department Stores Co.; Federated Department Stores, Inc.; J. C. Penney Co.; K Mart Corp.; Goldring, Inc.; Jordan Marsh Co.; McKeever's IGA Foodliner, Inc.

2. General Laws 1956 (1981 Reenactment) § 11–40–1 provides:

   "Except as provided in §§ 5–22–6 to 5–22–11, inclusive, every person who shall do or exercise any labor or business or work of his ordinary calling, or use any game, sport, play

The plaintiffs sought to enjoin the defendants from selling products on Sunday other than those for which their Sunday sales licenses were issued. The plaintiffs argue that the trial justice erred in dismissing the complaint and in holding that G.L.1956 (1976 Reenactment) § 5–23–2, as amended by P.L.1976, ch. 169, § 1, which authorizes the issuance of Sunday sales licenses only to certain "small" retail establishments, violated the defendants' constitutional rights to equal protection and due process. Two defendants cross-appeal from the denial of the defendants' motion to dismiss the action, contending that the statute sued upon, § 5–23–6(C), as enacted by P.L.1976, ch. 169, § 2, does not provide for injunctive relief under the circumstances of this case.

General Laws 1956 (1981 Reenactment) § 11–40–1,[2] commonly referred to as "the blue law," is a general prohibition of activity on Sunday, other than acts of "necessity and charity," in the absence of a valid license or permit authorizing such activity. The issuance of licenses authorizing retail establishments to open on Sunday is governed by § 5–23–2. That section, which originally exempted from the Sunday prohibition the sale of certain commodities, was amended to provide for an exemption based on the size of the business involved rather than on the type of merchandise sold. Section 5–23–2 authorizes the granting of Sunday sales licenses to those retail establishments

"at which in each calendar week of full time operation of the three (3) calendar months immediately preceding the date of application for such license, no more than an average of eighty (80) hours of employment per day is provided in the

---

or recreation on the first day of the week, or suffer the same to be done or used by his children, servants or apprentices, works of necessity and charity only excepted, shall be fined not exceeding five dollars ($5.00) for the first offense and ten dollars ($10.00) for the second and every subsequent offense; provided, further, however, that the above prohibitions shall not apply to any person or persons operating or functioning under a valid permit or license."

aggregate for all employees on the premises of such retail establishment including hours worked by employees of concessionaires, which average and aggregate shall be maintained during the term of the license; computation of hours of employment shall also include time spent in the performance of work by the owner or proprietor and members of his family. Said business shall be exempt from the provisions of chapter 40 of title 11 entitled "Sunday laws" and chapter 1 of title 25 entitled "Holidays and days of special observance," and may sell any and all items sold in the ordinary course of business with the exception of alcoholic beverages, provided, however, that all retail establishments may open for any purpose except for the sale of alcoholic beverages without obtaining a license on those Sundays between Thanksgiving day and Christmas day."

The statute further provides that Sunday work shall be strictly voluntary and that employees must be paid for Sunday work at a rate of no less than time and a half their regular rate. The final paragraph of § 5–23–2 provides for a limited commodity-based exemption, as follows:

"Retail establishments engaged in the preparation and/or sale of bakery products shall be licensed prior to the sale thereof in accordance with this section, provided however that the average hours of employment, time and one half and voluntary work provisions shall not apply. Retail establishments engaged in the sale of plants, shrubs, trees, fertilizer, seeds, bulbs, and gardening accessories, including any concession operated by or on the premises of a larger establishment, shall be licensed, prior to the sale thereof in accordance with this section, provided, however, that the average hours of employment provision shall not apply."

The sanctions for violation of § 5–23–2 are set forth in § 5–23–6, which provides:

"(A) Upon complaint filed with the director of labor by any employee that he is being required to work on the days set forth in § 5–23–1 and on Sundays as a condition of continued employment by any licensee, the director shall cause the same to be investigated, and if satisfied that a probable violation has occurred shall issue a complaint against the licensee with a notice for hearing. The hearing shall be held before a hearing officer of the department of labor. If the director concludes on the basis of the hearing record that such violation has occurred, he shall issue a cease and desist order to the licensee. Upon the second such complaint from any employee of the same retail establishment, which, after investigation, the director of labor deems to be valid, he shall refer the same to the attorney general for appropriate action as provided in subsection (C). The director shall issue regulations in conformity with law and preserving the rights of due process of all parties to implement the provisions of this subparagraph (A).

"(B) Every such licensed or unlicensed person, firm or corporation, including officers and officials thereof, who shall violate any of the provisions of such license or the provisions of this chapter, except as set forth in subparagraph (A) of this section, shall be fined not exceeding five hundred dollars ($500) for the first offense and not exceeding one thousand dollars ($1,000) for each additional offense.

"(C) Except as otherwise provided in subparagraphs (A) and (B) of this section, suit for violation of the provisions of this chapter, praying for injunctive or other relief, criminal or civil, may be instituted in the superior court by any city or town or by the attorney general."

According to the agreed statement of facts, the City of Warwick Board of Public Safety (the board) routinely and without limitation grants and issues Sunday sales licenses to those retailers that satisfy the eighty-hour-aggregate-average-of-employment limitation (small retailers). The products sold by small retailers include products similar to, and sometimes identical to, products sold by retailers that exceed the eighty-hour limitation (large retailers).

Nine of the ten defendants are large retailers that obtained Sunday sales licenses from the board based upon affidavits in which they stated that they engaged in the sale of bakery and/or gardening products. The remaining defendant, Lee's Superstore, Inc. (Lee's), obtained a license after submitting an affidavit in which it stated that it met the eighty-hour limitation. Following the issuance of such licenses and prior to February 1, 1981, the board sent letters to all defendants notifying them that their licenses permitted the sale of only the bakery and/or gardening products described in the final paragraph of § 5–23–2. On Sunday, February 1, 1981, and on Sunday, February 8, 1981, defendants opened for business, selling products other than such bakery and/or gardening goods.

On February 10, 1981, plaintiffs filed an amended complaint, seeking both preliminary and permanent injunctions against defendants pursuant to § 5–23–6(C). A consolidated hearing on the merits was held, at which hearing the Attorney General intervened as a party plaintiff.

Following this hearing, the trial justice denied plaintiff's prayer for injunctive relief and dismissed the complaint on the basis that the size classification established in § 5–23–2 was unconstitutional, stating:

"[T]here is . no rational connection between the exclusion of the large retail store classification and the stated purpose of promoting peace, recreation and tranquility. The distinction is arbitrary. It is discriminatory. It creates an unfair advantage to the small retailer who is in active competition with the large retailer. By dividing the classification into large and small retailer, that classification denies to those Defendants equal protection and due process."

■ State Sunday closing laws have undergone repeated constitutional challenges in recent years. In a series of landmark cases in 1961, the Supreme Court of the United States considered whether the closing laws of three states violated the equal-protection clause. *See Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *Gallagher v. Crown Kosher Super Market,* 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961). In those cases, the Court found that the purpose of modern Sunday closing laws was to promote a common day of rest and relaxation and held that promotion of this objective was a valid exercise of the state's power to protect the health, safety, recreation, and general welfare of its citizens. *E.g., McGowan v. Maryland,* 366 U.S. at 444–45, 81 S.Ct. at 1115, 6 L.Ed.2d at 410. Although noting that the challenged statutory schemes were riddled with exemptions based on the commodity and/or type of activity involved, in each case the Court held that the scheme withstood the minimal judicial scrutiny given to an equal-protection challenge to police-power legislation. In *McGowan* the Court set forth the standard of review to be applied in these cases:

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any [set] of facts reasonably may be conceived to justify it." *Id.* at 425–26, 81 S.Ct. at 1105, 6 L.Ed.2d at 399.

Applying this "rational basis" test, the Court in each case upheld the validity of the closing law, finding that the statutory exemptions were rationally related to state's objective of promulgating a general prohibition of Sunday work. These exemptions, the Court stated in *McGowan,* can be justified as "necessary either for the health of the populace or for the enhancement of the recreational atmosphere of the day

* * *." *Id.* at 426, 81 S.Ct. at 1105, 6 L.Ed.2d at 399.

The closing laws upheld in *McGowan* and its companion cases did not contain exemptions based on the size of the retail establishment.[3] Subsequent to *McGowan*, however, the Court has dismissed appeals from state court rulings upholding the constitutionality of closing laws containing size-based exemptions for want of a substantial federal question. *See Giant of Maryland, Inc. v. State's Attorney*, 267 Md. 501, 298 A.2d 427, *cert. denied*, 412 U.S. 915, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 236 A.2d 197 (1967), *cert. denied*, 390 U.S. 597, 88 S.Ct. 1261, 20 L.Ed.2d 158 (1968). Moreover, the Court has recently reaffirmed the traditional "rational basis" test in upholding the constitutionality of legislation not affecting a suspect class or a fundamental right. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461, 101 S.Ct. 715, 722, 66 L.Ed.2d 659, 667 (1981); *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 70–71, 99 S.Ct. 383, 390, 58 L.Ed.2d 292, 302 (1978). We find, therefore, that *McGowan* provides the appropriate standard of scrutiny for determining the validity of the legislation currently before us in the face of defendants' federal constitutional challenge.

■ The defendants also argue that the Sunday closing law violates art. I, sec. 2 of the Rhode Island Constitution. Our standard of review for determining whether such legislation violates this provision, which is essentially a guarantee of equal protection of the laws, is whether the challenged statute is a capricious exercise of the Legislature's law-making power. *Sweetman v. Town of Cumberland*, 117 R.I. 134, 151, 364 A.2d 1277, 1288 (1976).

The clear objective of Rhode Island's closing law is to promote a common day of rest and recreation. *See McGowan v. Maryland*, 366 U.S. at 489–90, 81 S.Ct. at 1169–70, 6 L.Ed.2d at 435 (Frankfurter, J., concurring). Because this objective is a proper legislative concern, we need only look at whether the statutory scheme rationally furthers that goal.

Several jurisdictions have considered the constitutionality of Sunday closing laws that contain uniform exemptions for small retail establishments. The vast majority of these courts have upheld the size classifications as rationally related to the furtherance of the general objectives of the closing laws.[4] *See Woonsocket Prescription Cen-*

**3.** Although the Maryland closing law at issue in *McGowan* contained an exemption that was based on the size of the retail establishment and is similar to that involved in this case, the Court apparently did not consider the constitutionality of that provision because it was added to the law subsequent to the challenger's arrest. *McGowan v. Maryland*, 366 U.S. 420, 423–24, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393, 396–97 (1961). *See Woonsocket Prescription Center, Inc. v. Michaelson*, 417 F.Supp. 1250, 1258 n.8 (D.R.I.1976); *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 59–60 n.4, 236 A.2d 197, 217 n.4 (1967) (Roberts, J., concurring), *cert. denied*, 390 U.S. 597, 88 S.Ct. 1261, 20 L.Ed.2d 158 (1968).

**4.** In *Caldor's, Inc. v. Bedding Barn, Inc.*, 177 Conn. 304, 417 A.2d 343 (1979), upon which the trial justice relied heavily in reaching his decision, the Connecticut Supreme Court held unconstitutional the state closing law, which contained an exemption for small retailers similar to the exemption in our G.L.1956 (1976 Reenactment) § 5–23–2, as amended by P.L.1976, ch. 169, § 1. The statute in *Caldor's, Inc.*, however, also provided that certain commodi-

ties could be sold only by certain types of stores. We believe that it was the latter provision, rather than the size classification, which the *Caldor's, Inc.* court found to be constitutionally infirm. *See* 177 Conn. at 322–23, 417 A.2d at 352–53. In fact, the court indicated that a blanket size distinction alone would have been upheld:

"If this court were to speculate about a rational basis to support the distinctions that the legislature has made, we might surmise that the legislature intended to limit Sunday law exemptions in order to minimize their impact on a day basically set aside for rest and recreation. One way to achieve that objective would be to permit only a relatively small number of small establishments, employing only a relatively small number of employees, to remain open on Sundays." *Id.* at 323, 417 A.2d at 353.

*Harry's Hardware, Inc. v. Parsons*, 399 So.2d 632 (La.App.1981), cited by defendants, is not apposite to this case. The closing law declared unconstitutional in *Harry's Hardware, Inc.* did not contain a size-based exemption, but rather allowed drugstores and grocery stores to open

*ter, Inc. v. Michaelson,* 417 F.Supp. 1250 (D.R.I.1976); *Southway Discount Center, Inc. v. Moore,* 315 F.Supp. 617 (N.D.Ala. 1970); *Caiola v. Birmingham,* 288 Ala. 486, 262 So.2d 602 (1972); *Opinion of the Justices,* 159 Me. 410, 191 A.2d 637 (1963); *Giant of Maryland, Inc. v. State's Attorney, supra; Zayre Corp. v. Attorney General,* 372 Mass. 423, 362 N.E.2d 878 (1977); *City of Jackson v. Luckett,* 336 So.2d 776 (Miss. 1976); *Opinion of the Justices,* 108 N.H. 103, 229 A.2d 188 (1967); *City of Bismarck v. Materi,* 177 N.W.2d 530 (N.D.1970); *Bertera's Hopewell Foodland, Inc. v. Masters, supra; State v. Smith,* 271 S.C. 317, 247 S.E.2d 331 (1978). These jurisdictions have held that the legislature could reasonably find that by limiting the size of stores that may open on Sunday, commercial activity is minimized and the number of citizens enjoying a day of rest is maximized, while products or services necessary or desirable for the enjoyment of the day are still available.

■ We find the reasoning of these decisions to be persuasive. By uniformly restricting the size of the retail establishment that may open on Sunday, the small-retailer exemption in § 5–23–2 satisfies the public's need to have services and consumer goods available on a continuing basis, yet it minimizes interference with the labor force and the recreational atmosphere of the day. The statutory exemptions allowing the sale of bakery and/or gardening products are also rationally based, for the Legislature could have reasonably concluded that the availability to the public of these products was necessary or desirable in order to promote the overall goals of the closing laws. *See McGowan v. Maryland,* 366 U.S. at 426,

81 S.Ct. at 1105, 6 L.Ed.2d at 399. We believe, therefore, that the exemptions bear a rational relationship to the overall goals of the Sunday closing law and are not a capricious exercise of the lawmaking power. Accordingly, on the basis of the record before us we hold that the statute does not deprive defendants of equal protection of the law.

■ The defendants also assert that Rhode Island's entire statutory scheme governing Sunday sales violates their right to due process of law because the many exemptions contained within it have destroyed the rational relationship between the laws and their purpose. Similar challenges have met with success in several states. *See, e.g., Rutledge v. Gaylord's Inc.,* 233 Ga. 694, 213 S.E.2d 626 (1975); *People v. Abrahams,* 40 N.Y.2d 277, 353 N.E.2d 574, 386 N.Y.S.2d 661 (1976); *Kroger Co. v. O'Hara Township,* 481 Pa. 101, 392 A.2d 266 (1978). We believe, however, that each of Rhode Island's exemptions is reasonably related to the promotion of a uniform day of rest while still providing for the public's needs on such a day. *See Bill Dyer Supply Co. v. State,* 255 Ark. 613, 502 S.W.2d 496 (1973); *Zayre Corp. v. Attorney General,* 372 Mass. 423, 362 N. E.2d 878 (1977). In addition to the exemptions contained in § 5–23–2, the statutory scheme exempts leisure activities,[5] such as sporting events, movies, and roller skating; personal necessities,[6] such as laundromats, automobile servicing, restaurants, and health care; and such situations in the business community in which Sunday work is an "economic necessity."[7] These exemptions are hardly so numerous or haphazard as to render the entire scheme arbitrary.

---

on Sunday and to sell their nondrug and non-food stock while it prohibited hardware stores carrying the same and/or similar stock from conducting Sunday business. We believe that such a distinction contains infirmities not presented in a uniform size-based classification such as that contained in § 5–23–2.

**5.** *See* G.L.1956 (1976 Reenactment) § 5–2–9 (bowling alleys), § 5–22–6 (automobile shows, ice polo, roller skating and hockey games), § 5–22–8 (movies), § 5–22–9 (concerts, lectures, amusement parks, etc.).

**6.** *See* G.L.1956 (1976 Reenactment) § 5–16–5 (laundromats), § 5–23–3 (automobile servicing and farm products auctions), G.L.1956 (1979 Reenactment) § 25–3–1 (health care, commercial fishing, restaurants, offshore petroleum exploration, etc.).

**7.** *See* G.L.1956 (1979 Reenactment) § 25–3–1 (manufacturing, data processing, emergencies, etc.).

Indeed, there appear to be many valid reasons for each of these exemptions; under *McGowan*, this is all that is required. *See McGowan v. Maryland*, 366 U.S. at 427, 81 S.Ct. at 1105, 6 L.Ed.2d at 399. Accordingly, we find that defendants have failed to meet their heavy burden of overcoming the presumption of constitutionality that economic legislation is accorded. *Id.* at 425–26, 81 S.Ct. at 1104–05, 6 L.Ed.2d at 398–99.

On their cross-appeal, defendants Jordan Marsh Co. and the Outlet Department Store raise several arguments in support of their assertion that the trial justice erred in denying their motion to dismiss. Initially, defendants contend that the licenses that they received under the bakery and/or gardening-products exemptions entitled them to sell on Sunday items other than bakery and/or gardening products so that they have violated neither their licenses nor the statute. We disagree.

When construing a statute, we must consider it in its entirety. *Montaquila v. St. Cyr*, R.I., 433 A.2d 206 (1981). We must interpret it so as to give it the meaning most consistent with its policies or obvious purposes. *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d 682 (1976); *Angel v. Murray*, 113 R.I. 482, 322 A.2d 630 (1974). Moreover, legislation should not be given a meaning that leads to an unjust, absurd, or unreasonable result. *In re John Doe*, 435 A.2d 330 (R.I., 1982); *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968).

Section 5–23–2 provides that retailers engaged in the sale of bakery and/or gardening products "shall be licensed prior to the sale *thereof* * * *." (Emphasis added.) This phrase denotes the Legislature's intent that a retailer obtaining a license under these exemptions may sell only bakery and/or gardening products on Sunday. Moreover, a reading of the entire chapter renders defendants' suggested construction unreasonable. The defendants' interpretation of these exemptions would allow a large retailer to conduct its regular business on Sunday simply by selling a few doughnuts or plants. Also, in the case of the exemption for the sale of bakery goods, the provision in § 5–23–2 requiring Sunday work to be voluntary does not apply. Therefore, a large retailer that receives a license under this exemption could force its employees to work on Sunday. We are not persuaded that the Legislature intended such unreasonable results in enacting this provision. Accordingly, taking the statute as a whole, we construe this provision to mean that a licensee under the bakery-products exemption has a limited license to prepare and/or sell only bakery products on Sunday and that a large retailer who receives a license under the gardening-products exemption has a limited license to sell only "plants, shrubs, trees, fertilizer, seeds, bulbs, and gardening accessories." Each defendant, therefore, has violated the terms of its license.

The defendants contend that even if we find them to have violated the terms of their licenses, they are not subject to suit for injunctive relief under the enforcement provisions of § 5–23–6. They claim initially that the penal provision of § 5–23–6 requires that the statute be given a strict construction. Reading the statute in this light, defendants argue, injunctive relief under § 5–23–6(C) is not available to plaintiffs in this case because § 5–23–6(B) provides for fines for license violations (such as are involved here) and § 5–23–6(C) expressly excludes cases covered by § 5–23–6(B).

Language that is narrowly construed in a penal statute may be liberally construed in a remedial statute. *State v. Simmons*, 114 R.I. 16, 18, 327 A.2d 843, 845 (1974). A statute, however, may contain one section that is penal in nature and another that is remedial. *State v. Pullen*, 58 R.I. 294, 302, 192 A. 473, 476 (1937); *Aylsworth v. Curtis*, 19 R.I. 517, 521, 34 A. 1109, 1110 (1896). Although § 5–23–6(B) is a penal provision, subsection (C) of that statute, providing for injunctive relief for violations of the chapter, is evidently remedial in nature, and the current proceeding is brought under this provision. Under such circumstances, subsection (C) must be given

a liberal construction in order to effectuate the purposes of that provision. *See State v. Pullen*, 58 R.I. at 302, 192 A. at 476.

■ If we were to adopt defendants' interpretation of the provision, which would allow suits for injunctive relief only when action under subsection (B) is not available, injunctions could virtually never be obtained.[8] Subsection (B) encompasses every conceivable situation that may arise: violations of the chapter and violations of licenses, by both licensed and unlicensed retailers. To give § 5–23–6(C) the meaning suggested by defendants would be to render the injunction provision a virtual nullity. Consequently, in light of the aforementioned principles of statutory construction, we interpret that provision to authorize suits for injunctive relief even when action under subsection (B) is available.

■ The defendants next contend that injunctive relief may not be sought here because license violations do not constitute violations of chapter 23 of title 5, and because § 5–23–6(C) applies only to "violation[s] of the provisions of this chapter." Once again, we cannot accept the construction of the chapter urged upon us by defendants. Initially, we note that in the case of the small-retailer exemption, § 5–23–2 expressly requires that the statutory-hours limitation "shall be maintained during the term of the license." Consequently, a small-retailer licensee plainly violates the provisions of the chapter if it exceeds the hours limitation. Although the portion of § 5–23–2 authorizing the granting of limited licenses to sell bakery and/or gardening products does not contain such express prohibitory language, we believe that when the Legislature enacts a licensing statute and imposes certain conditions for the granting of such licenses, such as these commodity-based requirements, it would be unreason-

able to interpret that statute as not requiring licensees to comply with those conditions. Moreover, we can see no reason why the Legislature would allow injunctive relief to be available for violations of one type of license but not for violations of another type. Consequently, we interpret this chapter as prohibiting violations of both limited licenses and small retailers' licenses.

■ Even if we had found the chapter to be ambiguous in regard to whether § 5–23–6(C) may be invoked to remedy license violations, we would have arrived at the same result. When ambiguity renders construction of legislation necessary, we must attempt to ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature, and purpose of the enactment thereof. *Narragansett Electric Co. v. Harsch*, 117 R.I. 395, 402, 368 A.2d 1194, 1199 (1977); *Mason v. Bowerman Bros., Inc.*, 95 R.I. 425, 431, 187 A.2d 772, 776 (1963). In enacting chapter 23 of title 5, the Legislature evidently intended to modernize the Sunday closing statutory scheme so that the overall goals of the laws could be better effectuated. Included in the revised scheme were stiffer fines for violations in order to remove the profit motive in conducting illegal Sunday business and injunctions to prevent future violations. Under defendants' construction of the chapter, the only occasions for which injunctions are available are when licensed retailers fail to comply with the wage, hour, and/or voluntariness requirements of § 5–23–2. We believe that the construction urged by defendants fails to reflect the obvious legislative intent of increasing compliance with, and facilitating enforcement of, the closing laws.[9]

---

**8.** Under defendants' interpretation, relief under subsection (C) of § 5–23–6 is available only when so specified in subsection (A), which provides that the director of labor shall refer employee complaints "to the attorney general for appropriate action as provided in subsection (C)." If this were the only situation in which subsection (C) could be invoked, however, the

Legislature could merely have included the language of subsection (C) in subsection (A).

**9.** We note that the question whether the chapter prohibits license violations is separate from the question whether the chapter prohibits unlicensed retailers from operating on Sunday. The chapter does not on its face prohibit such

In this case, each defendant has violated the licensing provisions of § 5–23–2 pursuant to which its license was issued.[10] They are all, therefore, subject to a suit for injunctive relief under § 5–23–6(C).

The defendants offer alternative grounds for affirming the dismissal of the complaint.[11] We find all of these arguments to be without merit and deserving of only summary discussion. Initially, defendants argue that plaintiffs should be estopped from asserting that the sale of items other than bakery and/or gardening products by defendants on Sunday constitutes a violation of chapter 23, title 5. They essentially argue that they were misled by the board into the belief that they would be subject only to the insignificant fines contained in § 11–40–1 rather than to the substantial sanctions in § 5–23–6 if they chose to violate the closing laws. This claim hardly constitutes the sort of inducement or detrimental reliance that could support an estoppel. *See Loiselle v. City of East Providence,* 116 R.I. 585, 593, 359 A.2d 345, 349 (1976).

The defendants next contend that plaintiffs are barred by the equitable doctrine of unclean hands because the city has acquiesced in the Sunday operation of Douglas Drug of Warwick, Inc. (Douglas Drug), an unlicensed retailer. The evidence is insufficient to entitle defendants to benefit from the unclean-hands doctrine. The city did not ignore the fact that Douglas Drug was operating on Sunday without a license, but rather sought to enjoin Douglas Drug from so operating. The city's request for injunctive relief was denied and the

complaint was dismissed. There is nothing in the record to suggest that the city's decision not to appeal was based on improper motives so as to give rise to a finding of unclean hands.

The defendants claim that the city has discriminatorily enforced the closing laws because no enforcement action has been taken against Douglas Drug since the *Douglas Drug* Superior Court decision. The defendants, however, have provided no evidence establishing the intentional or purposeful discrimination of enforcement necessary to support such a claim. *See State ex rel Scott v. Berberian,* 109 R.I. 309, 315, 284 A.2d 590, 594 (1971), *cert. denied,* 405 U.S. 1036, 92 S.Ct. 1314, 31 L.Ed.2d 577 (1972).

The defendants finally contend that, in bringing the instant suit, the plaintiffs have effectively attempted to revoke the defendants' sales licenses without prior notice and a hearing in violation of the defendants' right to procedural due process. This argument is, to say the least, unconvincing. In seeking to enjoin the defendants from selling items other than bakery and/or gardening products, the plaintiffs are not trying to revoke the defendants' licenses, they are simply attempting to enforce compliance with what they understand to be the terms of the licenses. Notice and a hearing are not required before such action.

The plaintiffs' appeal is sustained, the judgment in favor of the defendants is reversed, and the case is remanded to the

activity, but § 5–23–6(B) expressly provides for fines to be applied against unlicensed retailers that violate the chapter provisions. In resolving this ambiguity, and construing the chapter in its entirety and in light of the evident legislative intent, we interpret the chapter as prohibiting unlicensed retail sales on Sunday, except as otherwise provided. The penal and injunctive provisions of § 5–23–6(B) and (C) are therefore available against unlicensed retailers.

**10.** However, one of the defendants, Lee's, obtained a license under the statutory exemption for small retailers rather than under the bakery and/or gardening-products exemptions.

Unlike the other defendants, therefore, Lee's was entitled to sell on Sundays any product other than alcohol. Accordingly, plaintiffs' complaint seeking an injunction ordering all defendants to sell on Sundays only bakery and/or gardening goods was properly dismissed in regard to Lee's.

**11.** We have often stated that we shall accept a lower court decision that is correct even though we do not accept the reasoning upon which it rests. *Lee v. Nielsen,* R.I., 426 A.2d 257, 258 (1981); *Mercier v. City of Central Falls,* R.I., 412 A.2d 927, 929 (1980).

Superior Court for further proceedings in accordance with this opinion.

SHEA, Justice, concurring in part and dissenting in part.

I join in the conclusion of the majority that G.L.1956 (1976 Reenactment) § 5–23–1 through § 5–23–6, as amended by P.L.1976, ch. 169, § 1 does not deprive these defendants of equal protection of the law nor does it violate their rights of due process. However, I believe that the cross-appeals of the Outlet Co. and Jordan Marsh Co. from a denial of their motions to dismiss should be sustained.

Section 5–23–6(C) does not give the right to seek injunctive relief in the situation before the court because it mentions only violations of the statute, not license violations, and limits injunctive relief to situations in which the remedies of subsections (A) (improperly forcing an employee to work Sundays) and (B) (criminal penalties for violations of license provisions) are unavailable. I do not believe that this court should presume that the Legislature was in error in failing to include license violations when it listed the circumstances in which injunctive relief could be sought.

It has been my belief for some time that § 5–23–1 through § 5–23–6 does not prohibit Sunday sales but rather serves only as a licensing statute which provides an exemption from the prohibitions of G.L.1956 (1981 Reenactment) § 11–40–1. But the statute does not command that a retailer obtain a license, nor does it prohibit sales without a license. I would prefer that any omissions in this legislation be remedied by the Legislature, not by the court.