WILLIAM E. POWERS, *Attorney General, ex rel.* EUGENE DOYON *vs.* DOLOR E. CHARRON.

NOVEMBER 13, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

412

CONDON, J. This is a petition in equity in the nature of quo warranto to try title to the office of building inspector of the city of Central Falls. It was brought by the attorney general at the relation of Eugene Doyon, who claims that he is the lawfully elected holder of said office and that the respondent, Dolor E. Charron, has unlawfully intruded

therein and illegally withholds the same from him, the relator.

The respondent has filed an answer to such petition wherein he denies that he has usurped said office or that the relator has any lawful right thereto. He admits that he has taken possession of the office and excluded the relator therefrom but claims that he has a lawful right to do so as the duly elected and appointed incumbent.

It appears from the pleadings and a stipulation filed by the parties that the essential facts are undisputed. However, the parties are in sharp controversy as to the legal effect of some of them. Such controversy has resulted in the bringing of the instant proceeding. The controversial issues therein raised will more clearly appear from the following summary of the undisputed facts.

On November 4, 1952 the electors of the city of Central Falls adopted a so-called home rule charter which had been framed by a charter commission chosen pursuant to article XXVIII of amendments to the constitution of this state. That charter vests the legislative power in a one-chamber city council. Article I, section 1-101. It also vests the executive and administrative power in "a Mayor and such other officers, departments, boards and commissions as are designated and authorized in this charter." Article I, sec. 1-102.

The powers and duties of the city council and the procedures by which such powers shall be exercised and such duties discharged are set out in five chapters under art. II. Chapter 5 is entitled "Councilmanic Appointments." Section 2-501 thereof is entitled "Other Appointments" and provides that "The Council by a majority of its members may elect such other officials not inconsistent with this charter as they shall deem necessary."

The organization of the executive and administrative branch is prescribed in art. III. Chapter 1, sec. 3-100, of that article specifically enumerates the officers, depart-

ments, boards, commissions and other agencies under that branch of the government. The office of building inspector does not appear in such enumeration and no provision for that office appears elsewhere in the charter.

The powers and duties of the offices are expressly set out in art. IV, but there is no reference therein to the powers and duties customarily exercised and discharged by the office of building inspector under the old charter. Nor is there any provision that could be reasonably construed to imply that the duties of building inspector were intended to be included under any specific executive or administrative department. In these circumstances when the city government was being reorganized under the new charter doubts arose as to the status of the office of building inspector.

Prior to the adoption of the new charter the building inspector was elected biennially by the city council in joint convention, it then being a bicameral body consisting of the board of aldermen and the common council. Public laws 1912, chapter 877, sec. 5. The respondent was so elected by the old city council on January 5, 1953. After the city government was reorganized under the new home rule charter, the mayor as the head of the department of public safety appointed respondent as building inspector. Later on October 11, 1954 the city council elected him in accordance with the provisions of a new ordinance which it adopted on August 25, 1954.

Apparently such action by both the mayor and the council did not at that time provoke litigation, probably because each chose the same person for the office. Whether respondent thereafter relied for the validity of his title upon his appointment by the mayor or his election by the council does not appear. However, in the instant proceeding he relies upon his appointment by the mayor or, if such appointment be a nullity, upon his election by the city council under the old charter.

The second city council elected under the home rule charter which took office in January 1956 refused to recognize the mayor's appointment and elected the relator. This action precipitated a controversy which resulted in litigation in the superior court and ultimately in the bringing of the instant petition in this court. In support of his claim of title the relator contends that the ordinance adopted by the first city council under the home rule charter is consistent therewith and therefore valid; that his election thereunder is legal; that the mayor's appointment of respondent is null and void; and that respondent's right to hold over by virtue of his election by the city council under the old charter legally expired upon the relator's election and qualification.

The respondent contends that the ordinance under which the relator was elected is invalid on the ground that it is contrary to the charter. He argues that by virtue of art. X, chap. 3, secs. 10-300 and 10-301, of such charter, the office of building inspector was abolished and its functions automatically transferred to the department of public safety. In this connection he asserts that the only authority vested in the city council was the power to create a division of building inspector under said department. If this were done he contends that the mayor would have the authority to appoint the head of such division as in the case of the division of police and the division of fire.

Does the charter abolish the office of building inspector and automatically transfer its functions to the department of public safety? This is the first question to be determined, and its answer depends upon a construction of secs. 10-300 and 10-301 which read as follows:

"Section 10-300. Abolishment of Agencies. The following offices, departments, boards and commissions of the City government are hereby abolished as of the effective date of this charter:

(a) All existing offices, including specifically the office of Mayor, the Board of Aldermen, the Common

Council and the School Committee, except ward and city committees of political parties and the Board of Canvassers and Registration.

(b) All existing executive or administrative departments, bureaus and divisions.

(c) All existing boards and commissions appointed by the Mayor, the Board of Aldermen, the Common Council, and the City Council, or any of them.

Section 10-301. Functions Transferred. The functions of all offices, departments, boards and commissions abolished by this charter shall be transferred automatically to the new offices, departments, boards and commissions created in this charter in accordance. with the duties imposed upon each of them in this charter."

After carefully considering the language of sec. 10-300 we are of the opinion that the *office* of building inspector is not included thereunder. While paragraph (a) refers generally to "All existing offices," the generality of such language is immediately limited by an enumeration of the offices to which it is intended to apply. This language is not to be extended to include other *offices* not mentioned, unless it otherwise appears from the charter itself that the enumeration of particular offices was not intended to limit the generality of the foregoing language. This is in accord with the well-recognized principle that "General and specific words in a statute which are associated together, and which are capable of an analogous meaning, take color from each other, so that the general words are restricted to a sense analogous to the less general. Under this rule, general terms in a statute may be regarded as limited by subsequent more specific terms." 50 Am. Jur., Statutes, §249, p. 244.

The fact that here the general words are preceded by the word "including" does not prevent the application of this principle. On the contrary it has been expressly held that where a general term is followed by such word, the primary import of the specific words following it is to indicate restriction rather than enlargement. *Application of Central*

*Airlines, Inc.,* 199 Okla. 300. See also *Railroad Comm'n of Texas* v. *Texas & New Orleans R. Co.,* Texas Civ. App., 42 S.W.2d 1091. The rule was referred to and applied in *Bell Telephone Co. of Pa.* v. *Public Service Comm'n of Pa.,* 119 Pa. Super. 292, 297, where the court stated that it was the general rule "that words of a general import are limited by words of restricted import immediately following and relating to the same subject * * *."

Of course this principle is not a positive rule of law but merely a rule of construction to be employed only in determining the meaning of an ambiguous statute. It may also be resorted to where a literal reading of the statute results in unreasonable or absurd consequences. In the instant case were the words "All existing offices" to be given general application so as to include the office of building inspector, notwithstanding the restrictive words that follow which manifestly do not include such office, the result would be that there would be no provision for a building inspector to assist the city council in performing its function of considering applications for building permits. While such a result may not amount to an absurdity, we are of the opinion that it would be unreasonable and that it was not intended by the charter commission. On the contrary it is reasonable to believe that they had in mind only the abolition of all elective offices such as those they enumerated, and that they recognized there might be other offices needed in the city government which would not be inconsistent with the charter or necessary to assign or transfer to the executive and administrative branch of the government.

In this connection it is significant that they provided in art. II, chap. 5, sec. 2-501, for the election by the city council of officials not inconsistent with the charter as the council shall deem necessary. And it is of further significance that in declaring in art. X, chap. 1, sec. 10-102, that the charter shall supersede all statutes and ordinances inconsistent therewith, they expressly provided: "and all stat-

utes and ordinances not inconsistent with this charter shall continue in full force and effect until the Council shall otherwise ordain."

Those provisions tend to confirm our opinion that neither paragraph (a) nor paragraph (b) or (c) applies to the office of building inspector. At the time the charter was adopted the office of building inspector was not one of the "existing executive or administrative departments, bureaus and divisions." On the contrary it was an *office* whose sole function was to assist the legislative branch of the government in considering applications for building permits. It was thus more in the nature of an agency of the city council. But although the city council chose the building inspector, the *office* was neither a "board" nor a "commission" and therefore it was not includable under the language of paragraph (c). This differentiation between *offices* and *boards* or *commissions* is apparent from the phraseology employed by the charter commission itself in framing these very secs. 10-300 and 10-301, and we therefore adhere to it in determining what the commission intended by those sections.

Since in our opinion the charter did not abolish the office of building inspector and transfer its functions to the department of public safety and since nowhere in the charter is the mayor authorized to appoint such an inspector, respondent is without lawful right thereto under his appointment by the mayor.

The next question is whether respondent is nevertheless entitled to hold the office by virtue of his valid election originally by the city council under the old charter. On this question we are of the opinion that until the first city council under the home rule charter adopted an ordinance prescribing how the building inspector should be chosen, respondent was legally entitled to hold over and lawfully exercise the duties required of him by the building ordinance then in effect and not abrogated by the home rule charter.

But when the new city council enacted a new ordinance providing for the election or appointment of a building inspector by a majority of its members, Revised Ordinances of Central Falls, chap. 7, art. I, sec. 7-6, and duly elected the respondent, his term of holding over as aforesaid terminated. Thereafter when the second city council elected the relator and he duly qualified, he became lawfully entitled to the office in succession to respondent.

Unless, as argued by respondent, such new ordinance is inconsistent with the charter and therefore invalid, respondent is usurping the office of building inspector and should be ousted therefrom. In our opinion there is no merit in the contention that such ordinance is invalid. The action of the city council is consistent with the provisions of art. II, chap. 5, sec. 2-501, of the charter which expressly provides: "The Council by a majority of its members may elect such other officials not inconsistent with this charter as they shall deem necessary."

There can be no question that in the present state of the building ordinance of the city a building inspector is required to make such ordinance function. Nor is the election of such officer by the city council inconsistent with the charter, as respondent contends, on the ground that it is an executive or administrative office and therefore not within the power of the city council to choose. We do not agree that such office is of that exclusive nature. On the contrary, as we have hereinbefore remarked, we think it partakes more of the nature of an auxiliary to the city council in the performance of its expressed duties under the building ordinance.

In any event it was always under the legislative branch under the old charter, and in the absence of any express or necessarily implied prohibition in the home rule charter against its continuance thereunder, and we find none, we are of the opinion that the city council's authority to elect the building inspector is consistent with such charter and

is therefore valid. Hence we hold that the relator is the lawfully elected building inspector and is entitled to the possession of such office and to have the respondent ousted therefrom.

The petition is granted, and on November 18, 1957 the parties may present for entry in this court a form of decree in accordance with this opinion.

*Edward L. Gnys, Jr.,* for petitioner.

*James G. O'Malley,* for respondent.