267 A.2d 404.

RHODE ISLAND CONSUMERS' COUNCIL *vs.* PUBLIC UTILITIES COMMISSION *et al.*

JUNE 23, 1970.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is a petition for a writ of certiorari. It appears therefrom that on December 4, 1968, Newport Gas Light Company, hereinafter referred to as Newport, a corporation created by an act of the Rhode Island General Assembly in the May session 1853, and Allied New Hampshire Gas Company, hereinafter called Allied, a corporation neither incorporated nor authorized to do business in this state, filed a joint petition with the Public Utility Division. By the terms thereof Newport proposed to sell substantially all of its property, assets, plant and business to Allied in exchange for 196,862 shares of common stock, par value five dollars, of Allied. This joint petition was addressed to the jurisdiction of the division, as vested therein by G. L. 1956 (1969 Reenactment) §39-3-24[1]

---

[1]"Transactions Between Utilities for Which Approved Required.—With the consent and approval of the division, but not otherwise:

"(a) Any two (2) or more public utilities doing business in the same municipality or locality within this state, or any two (2) or more public utilities whose lines intersect or parallel each other within this state, or furnish a like service or product within this state, may enter into con-

A hearing was held on said joint petition by the then Public Utility Administrator on December 19, 1968 and January 2, 1969, at which hearings the instant petitioner was a party of record.

On January 7, 1969, the administrator rendered a decision approving the joint petition of Newport and Allied. Thereafter, on January 16, 1969, the instant petitioner appealed to the then extant Public Utility Hearing Board.[2]

Newport and Allied thereupon filed a motion with the appeal board to dismiss instant petitioner's appeal on the ground that said appeal was not timely. After a hearing, said motion was denied and dismissed on February 26, 1969. Thereafter, on March 18, 1969, Newport and Allied again moved to dismiss, this time on the ground that the instant petitioner lacked standing. This second motion to dismiss was similarly denied by the hearing board.

---

tracts with each other that will enable such public utilities to operate their lines or plants in connection with each other.

"(b) Any public utility may purchase or lease all or any part of the property, assets, plant and business of any other public utility, and in connection therewith may exercise and enjoy all of the rights, powers, easements, privileges and franchises theretofore exercised and enjoyed by such other public utility with respect to the property, assets, plant and business so purchased or leased.

"(c) Any public utility may sell or lease all or any part of its property, assets, plant and business to any other public utility, provided that a sale or lease of all or substantially all its property, assets, plant and business shall be authorized by a vote of at least two-thirds in interest of its stockholders at a meeting duly called for the purpose. Any stockholder who shall not have voted in favor of such sale or lease, either in person or by proxy, shall be entitled to the rights and the corporation shall be subject to the duties, obligations and liabilities set forth in §§7-5-8 to 7-5-16. inclusive, with respect to dissenting stockholders and to corporations which sell, lease or exchange their entire assets respectively.

"(d) Any such public utility may purchase the stock of any other such public utility."

[2]Prior to and on January 16, 1969, appeals from decisions of the Public Utility Administrator, with certain exceptions not relevant here, were taken to the Public Utility Hearing Board pursuant to the provisions of then §39-5-9, which section was omitted by P. L. 1969, chap. 240.

However, before a hearing could be held by the appeal board on the merits of the instant petitioner's appeal, said board was abolished by necessary implication resulting from the enactment of P. L. 1969, chap. 240, which became effective May 16, 1969. (See n.2.) This act, *inter alia,* amended title 39, chapter 1 of G. L. 1956, so as to create a public utilities commission consisting of three members, which commission was made jurisdictionally independent of the Department of Business Regulation within which public utilities had previously been a division. Further, prior to the reorganization effected by P. L. 1969, chap. 240, the Division of Public Utilities consisted of an administrator from whose decisions and orders appeals were taken to the Public Utility Hearing Board (see n.2), which board was also an agency of the Department of Business Regulation. Said P. L. 1969, chap. 240, sec. 8, provides for appeals from the newly created Public Utilities Commission, thereby implicitly repealing §39-5-9 (see n.2). However, said P. L. 1969, chap. 240 makes no provision for the consideration of appeals pending before the Public Utility Hearing Board.

Confronted with no clear-cut forum to which petitioner's pending appeal from the administrator's decision of January 7, 1969, could be heard, petitioner for certiorari here on June 18, 1969, filed a motion with the newly created commission seeking an order suspending the administrator's decision and requesting a hearing on the merits of its pending appeal by said commission. This motion was denied by the commission on September 22, 1969.[3]

---

[3]When the instant cause was argued in this court, counsel for the Public Utilities Commission informed us that the September 22, 1969 decision of the commission was not based on the merits of the instant petitioner's appeal from the January 7, 1969 decision of the former administrator. Rather, we were advised that the commission denied the motion on the ground that P. L. 1969, chap. 240 did not vest the commission with jurisdiction to hear appeals pending at the time the commission was created.

Shortly thereafter, namely September 30, 1969, Rhode Island Consumers' Council filed the instant petition seeking judicial review by way of certiorari of the former administrator's decision of January 7, 1969. In support thereof, it averred, *inter alia,* that the then administrator lacked jurisdiction to approve the joint petition of Newport and Allied.

However, the petition also averred that the ruling of the commission denying petitioner's motion to suspend the effect of the administrator's decision and to assign petitioner's appeal from that decision to a hearing on the merits of the appeal, resulted in depriving petitioner of any judicial review other than by way of certiorari. This latter averment called for the automatic issuance of the writ by virtue of the provisions of P. L. 1969, chap. 240, secs. 1 and 8.

Said sec. 1, now G. L. 1956, §39-1-17, as amended, provides in pertinent part that the instant petitioner shall have standing to "institute or participate in any appeal to the supreme court as an aggrieved party."

Section 8 of P. L. 1969, chap. 240, now §39-5-1, as amended, expressly provides that judicial review of any decision or order of the Public Utilities Commission may be had by any party aggrieved therefrom by way of certiorari exclusively.

By reason of the averment relative to the Public Utilities Commission's denial of the instant petitioner's motion, a writ issued out of this court as mandated by P. L. 1969,

---

. It is appropriate at this juncture to note that from our independent consideration of P. L. 1969, chap. 240, the conclusion reached by the commission that it lacked jurisdiction was correct. In enacting P. L. 1969, chap. 240, the legislature used no language which can be reasonably construed as vesting the newly created commission with appellate jurisdiction to review decisions or orders rendered by the Division of Public Utilities prior to the creation of the commission.

chap. 240, sec. 8. Pursuant thereto, citations were issued to the Public Utilities Commission and Newport.

Although the writ was issued pursuant to and in accordance with said P. L. 1969, chap. 240, sec. 8, petitioner and respondent Newport filed briefs and orally argued the merits of the administrator's decision. However, since the issuance of the writ under that section would raise only the question of the correctness of the newly created commission's denial of petitioner's motion addressed to it, we conclude, for reasons hereinafter stated, that the merits of the administrator's decision are more properly reviewable in the Superior Court on appeal thereto under the provisions of §42-35-15. See *Yellow Cab Co.* v. *Public Utility Hearing Bd.,* 102 R. I. 100, 228 A.2d 542.

To the end that petitioner's standing to seek judicial review in the Superior Court of the former administrator's decision of January 7, 1969, will not present a problem for that court, we deem it advisable to consider a threshold contention made by respondent Newport before us. This is that the petitioner lacked standing to appeal said decision to the Public Utility Hearing Board in the first instance, and consequently lacks standing to be heard on that question in any judicial forum. In support of this position, it argues that petitioner is a creature of the General Assembly and as such it is possessed of only such rights as are expressly or by necessary implication conferred by the enabling act creating it. With this as its premise Newport refers our attention to P. L. 1966, chap. 239, now title 42 of G. L. 1956, as amended, by the enactment of which the instant petitioner came into being.

On January 7, 1969, when the then Public Utility Administrator rendered the decision approving the joint petition of Newport and Allied, an appeal from that decision could be taken to the then existing Public Utility Hearing Board only by "Any person or persons aggrieved * * *."

(See n.2.)  Also at that time §42-42-5[4] entitled "Powers and Scope of Activities" provided as follows:

"The consumers' council shall conduct studies, surveys and research in all matters affecting consumer interests; promote ethical business and trade practices; recommend legislative programs to protect the consumer; further consumer education; appear before federal and state legislative committees, commissions or department hearings on matters affecting consumers; report to the attorney general for prosecution such violations of laws or regulations affecting consumers as its investigations or studies may reveal; secure all available information on utility rates, interest rates, insurance rates, transportation rates and services, and cost of commodities and services where regulated by law of the general assembly and make such information available to the public.  The director, or his designee, shall appear for and in behalf of the people of the state before all boards, administrators, commissioners, commissions, departments, divisions or other agencies of the state in any hearing or matter affecting the rights of the consuming public, including but not limited to any proceedings seeking the curtailment of services or the increase of rates or costs of services or commodities where regulated by law of the general assembly.  In any such proceedings the consumers' council shall be deemed an interested or aggrieved person or party for the purpose of instituting proceedings, filing complaints, receiving notices and participating in administrative or judicial review of any order, decree, decision or ruling, any other provisions of the general laws to the contrary notwithstanding; provided, however, that nothing in this chapter shall be so construed as to exclude any other attorney or counsel for any person, association or cor-

[4]Section 42-42-5 was amended by P. L. 1969, chap. 33, §1, so as to broaden the powers and scope of activities of the consumers' council. However, this amendment did not become effective until April 24, 1969, and, for this reason, said amendment is inapplicable here.

poration. At all hearings wherein the consumers' council represents the public, it shall be represented by competent, qualified legal counsel."

Reasonably read, Newport argues, in effect, that while §42-42-5 makes the consumers' council an interested or aggrieved person for the purpose of instituting proceedings before an administrative agency, it is not an aggrieved person for the purpose of instituting judicial review of an administrative decision. Rather, Newport contends, the language "* * * interested or aggrieved person or party for the purpose of instituting proceedings, filing complaints, receiving notices *and participating in administrative or judicial review* of any order, decree, decision or ruling, any other provisions of the general laws to the contrary notwithstanding * * *" (emphasis ours) clearly evinces a legislative intent to restrict the consumers' council's status in appeals to the Public Utility Hearing Board and subsequently to the courts to participation in appeals instituted by others as to whose right of appeal no question exists. So restricted, Newport further argues, the instant petitioner was without standing to institute its appeal to the then existing Public Utility Hearing Board and, consequently, is without standing to initiate judicial review.

In support of this position, Newport refers our attention to other statutory provisions and decisions in this state bearing on the legal connotation of *aggrieved persons;* stresses dictionary definitions of the word *participate* and buttresses these references by citing three cases from other jurisdictions.[5]

The thrust of the holding in the first two cited cases relied on by Newport is that where one relies on a legisla-

---

[5]The cases thus cited are: *Bosley* v. *Dorsey,* 191 Md. 229, 60 A.2d 691; *James & Yost, Inc.* v. *State Bd. of Higher Education,* 216 Ore. 598, 340 P.2d 577; *Wharton* v. *Fidelity-Baltimore Nat. Bank,* 222 Md. 177, 158 A.2d 887.

tive grant of standing to appeal, the claim to standing must be clearly expressed in the legislative grant or, at the very least, be necessarily implied. The third cited case is in point only to the extent that, under the factual circumstances of that case, the word *participate* was construed to be of common usage and connotes "* * * a part in and to share the benefits of some action or situation involving other persons." On the basis of the particular circumstances in each of the cited cases, the holdings of the Maryland and Oregon courts cannot be faulted, but we think them to be without relevance when contrasted with the significantly different circumstances on which the instant petitioner's standing turns.

Here, in interpreting the legislative intendment of §42-42-5, which Newport stresses, that section must be read in *pari materia* with §1 of said chapter and title.[6]

When §§1 and 5 are read together, it must be conceded that the legislative intendment regarding the consumers' council's right to institute judicial review is, if not a clearly expressed mandate to initiate judicial review, at least ambiguous in this regard. In such circumstances, it is a well-settled canon of statutory construction that this court will not undertake to read an enactment literally if to do so would result in attributing to the legislature an intention that is contradictory of or inconsistent with the evident purposes of the act. *Mason* v. *Bowerman Bros.*, 95 R. I. 425, 187 A.2d 772. See also *Zannelli* v. *DiSandro*, 84

---

[6]Section 42-42-1 provides:

"Consumers' Council—Establishment.—There is hereby created an agency of state government to be known as the consumers' council, the purpose of which shall be to promote the health, prosperity and welfare of the people of the state of Rhode Island by providing representation for the consuming public in all matters wherein the cost, quality or extent of services and commodities are fixed or regulated by law of the general assembly and developing and disseminating consumer information."

R. I. 76, 121 A.2d 652. In our opinion therefore, it is unlikely that the General Assembly would create a legal entity for the expressed purpose of providing the consuming public with legal representations in administrative hearings at which the public might not otherwise be represented, but deny to such public representative the right to appeal to an administrative or judicial forum provided for others. Rather, it seems to us, that by the language employed in §42-42-1 (see n.6) the General Assembly evinced a determination to provide the consuming public with legal representation, at all levels, in matters regarding which said public would be affected. Thus, we have no hesitancy in holding that petitioner had standing to appeal from the then administrator's decision to the then existing Public Utility Hearing Board.

This brings us then to a discussion of why we have concluded that, although petitioner has standing to seek judicial review of the former administrator's decision, such review is properly cognizable in the Superior Court. At the time petitioner's appeal to the Public Utility Hearing Board was pending before that body, judicial review of an adverse decision by it was legislatively provided under §42-35-15. This provision was enacted by P. L. 1962, chap. 112, §1, known and cited as the Administrative Procedures Act. It provided that, except for appeals from certain designated agencies, judicial review of administrative decisions and orders would be by way of appeal to the Superior Court. In *Yellow Cab Co.* v. *Public Utility Hearing Board,* 101 R. I. 296, 222 A.2d 361, we expressly found that the Public Utility Hearing Board was not one of the excepted agencies so that the remedy of a party or person aggrieved by a decision of said board was an appeal to the Superior Court.

Thus, had the Public Utility Hearing Board had time to pass on the merits of petitioner's appeal to it and having

done so rendered a decision, an appeal from that decision would have been to the Superior Court by the party adversely affected thereby. As heretofore noted, however, before the appeal board could act on petitioner's appeal, said board ceased to exist, and no provision was expressly made by the legislature for prosecutions of appeals pending before it. This failure confronted petitioner with understandable uncertainty as to the appropriate method for seeking judicial review. It therefore took the steps heretofore related.

This brings us to a consideration of the status of petitioner's appeal to the board once that forum ceased to exist by reason of the reorganization effected by the passage of P. L. 1969, chap. 240. In light of the fact that had the administrator's decision been considered and a ruling thereon made by the Public Utility Hearing Board, appeal would have been to the Superior Court, we have concluded that the effect of said chapter 240 was to eliminate a forum intervening between the administrator and the Superior Court. So considered, we are persuaded that petitioner's redress was to the Superior Court. Notwithstanding that the normal time period for prosecuting its appeal to the Superior Court might ordinarily be considered to be something less than the time sequences here involved, we are of the opinion that, by reason of the apparent vacuum resulting from the passage of P. L. 1969, chap. 240, petitioner should not be penalized for its failure to appeal directly to the Superior Court, and, so mindful, order that the record in the instant case be transmitted to the Superior Court where petitioner's appeal may be heard in accordance with the provisions of the Administrative Procedures Act.

The petition for certiorari is denied insofar as it relates to the Public Utilities Commission's denial of petitioner's motion to hear the appeal pending from the decision of the administrator, but otherwise, said petition is articulated so

as to constitute an appeal to the Superior Court, and the records in the case are hereby transmitted to that court for further proceedings.

ROBERTS, C. J., did not participate.

*Roberts & McMahon, Dennis J. Roberts, II,* for petitioner.

*Letts & Quinn, Richard F. Canning, Daniel J. Murray, Jerome B. Spunt,* for The Newport Gas Light Company.