359 A.2d 682.

PROVIDENCE JOURNAL COMPANY *vs.* JACQUELINE MASON.

JULY 8, 1976.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Doris, J. These petitions for certiorari seek review of a Superior Court judgment affirming in part and reversing in part an order of the Rhode Island Commission for Human Rights in a case of alleged employment discrimination of a physically handicapped person in violation of General Laws 1956 (1968 Reenactment) §28-5-7(A), as amended.

On February 11, 1974, the Providence Journal Company (hereinafter Journal) terminated the employment of Jacqueline Mason because of her failure to pass a physical examination required of all employees.

The record indicates that Mrs. Mason was employed as a copy editor on a trial basis between January 7 and January 11, 1974, and was hired permanently effective January 29, 1974. At the physical examination, administered on January 30, 1974. Mrs. Mason was wearing a modified Thomas Collar for relief from symptoms of a whiplast injury which she had received in an automobile accident in early 1973. The examining physician, Dr. Joseph Johnston, would not recommend her for employment because of stiffness, limited motion, and pain with motion in her neck.

Thereafter Mrs. Mason filed a complaint with the Rhode Island Commission for Human Rights (hereinafter commission) alleging that she had been discriminated against by the Journal because of her physical handicap in violation of §28-5-7(A)[1] of the Rhode Island Fair Employment Practices Act [G. L. 1956 (1968 Reenactment) §28-5-1 et seq].

---

[1] General Laws 1956 (1968 Reenactment) §28-5-7(A), as amended in pertinent part reads as follows:

"It shall be an unlawful employment practice:

(A) for any employer (1) to refuse to hire any applicant for employment because of his race or color, religion, sex, physical handicap, or country of ancestral origin, or (2) because of such reasons, to discharge an employee or discriminate against him

At a hearing before the commission Mrs. Mason testified that during her approximately three weeks of employment she performed all assigned tasks without difficulty or complaint and introduced into evidence a letter from her physician which stated that in his opinion she was "almost fully recovered". Doctor Johnston, the Journal's examining physician, testified that in his opinion Mrs. Mason was temporarily unsuited for a desk job at the time he examined her. In support of Dr. Johnston's testimony, Dr. Vincent Zecchino, a specialist in orthopedic surgery, in answer to a hypothetical question, testified that a person in Mrs. Mason's condition on January 30, 1974, should not have been employed at a desk job at that time because the work involved could have aggravated her condition.

In its order the commission found as a fact that Mrs. Mason had suffered a "whiplash" neck and back injury in early 1973 and that she suffered some pain and discomfort before, during, and after her employment with the Journal. However, it found that there was no evidence to suggest that she was unable to perform the duties of her position. It ruled as a conclusion of law that Mrs. Mason had a "physical disability" and "infirmity" within the meaning of §28-5-6(H), as amended[2] which section

----

with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment * * *."

[2]General Laws 1956 (1968 Reenactment) §28-5-6(H), as amended reads as follows:

" 'Physical handicap' means any physical disability, [infirmity], malformation or disfigurement which is caused by bodily injury, birth defect or illness, including epilepsy, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a seeing eye dog, wheelchair, or other remedial appliance or device."

defines "[p]hysical handicap" as that term is applied to the Fair Employment Practices Act. The commission then concluded that the Journal had terminated Mrs. Mason because of her "physical handicap" in violation of §28-5-7(A). Thereupon it ordered the Journal to hire Mrs. Mason with back pay and seniority to January 29, 1974, and to pay reasonable attorneys' fees to Mrs. Mason's attorneys.

As a party aggrieved by the commission's order, the Journal sought judicial review of that order by filing a complaint in the Superior Court under G. L. 1956 (1969 Reenactment) §42-35-15 of the Administrative Procedures Act.[3] At a subsequent hearing in Superior Court, the

---

[3]In its complaint filed in Superior Court and in its subsequent petition for a writ of certiorari to this court, the Journal mistakenly named the commission as defendant-respondent respectively. The correct defendant-respondent, of course, is Jacqueline Mason as the original complainant to the commission. Before the Superior Court and before the Supreme Court on the Journal's petition for a writ of certiorari, the commission, represented by the Attorney General appeared as a party and Mrs. Mason appeared as an intervenor. During oral argument we requested that the commission submit a brief on the question of whether it is a proper party to the instant appellate proceeding. In its brief the commission presents no specific statutory authority for the proposition that it should be a party in the instant case, but argues that to deny such status to the commission would severely impair the commission's obligation to effectuate the removal of the hateful barriers of discrimination. The commission relies on decisions of the courts of Delaware, New York, Pennsylvania and New Jersey wherein it has been held that the antidiscrimination agencies of those states are authorized to be parties to appeals from their orders even though the statutes authorizing judicial review of such orders do not specifically grant such authority.

This reliance is of no real assistance to the commission because the statutes upon which those decisions are predicated cannot be equated with our own. In *Buffi* v. *Ferri,* 106 R. I. 349, 259 A.2d 847 (1969), we held that the commission, representing the people and acting for the general public, had standing to seek review of a Superior Court judgment which otherwise might have gone unreviewed. Without specific statutory authority we see no reason to expand the holding in *Buffi* that the commission would be a proper party on all appeals from its orders.

Journal argued (1) that Mrs. Mason did not have a "physical handicap" within the meaning of §28-5-6(H), (2) that an employer does not violate §28-5-7(A) if it considers in its employment decision of a handicapped person the possibility that working might aggravate that person's physical condition and (3) that the commission was in error in ordering the Journal to pay attorneys' fees.

The Superior Court justice affirmed the commission's conclusion that Mrs. Mason had a "physical handicap" within the meaning of §28-5-6(H) and affirmed the commission's finding that the Journal had unlawfully discriminated against Mrs. Mason in violation of §28-5-7(A). In affirming this finding the trial justice noted that as long as a physically handicapped person's "fullest capabilities" are sufficient for the position, an employer may not consider the possibility of aggravation of that person's condition. Finally, the trial justice ruled that the commission was in error in awarding attorneys' fees because it lacked specific statutory authority for such award. A judgment incorporating his decision was duly entered.

The Journal thereupon filed a petition for certiorari under §42-35-16 of the Administrative Procedures Act to review that portion of the judgment of the Superior Court which sustained the order of the commission.[4] Subsequently, Mrs. Mason as intervenor filed a separate petition for certiorari under §42-35-16 of the Administrative Procedures Act to review that portion of the judgment of the Superior Court which reversed the commission's award of attorneys' fees.[5]

---

[4]As noted in the previous footnote the Journal incorrectly named the commission as respondent in its petition for certiorari. The correct respondent, of course, is Jacqueline Mason.

[5]Both petitions for certiorari were consolidated for hearing before this court because they arose out of the same matter. In this opinion we will consider Mrs. Mason in her correct status as party to the instant litigation and not as an intervenor.

The Journal challenges the trial justice's decision on two grounds: (1) that Mrs. Mason's "whiplash" injury was not a "physical handicap" within the meaning of §28-5-6(H) and (2) that, even if such "whiplash" is a physical handicap, §28-5-7(A) does not prohibit an employer from refusing to hire a handicapped person where the employment may aggravate that person's injury. In view of our concurrence with the Journal's first proposition, namely that Mrs. Mason's "whiplash" injury was not a "physical handicap" within the meaning of §28-5-6(H), we need not consider the Journal's second proposition nor Mrs. Mason's petition for certiorari.

The scope of our review is controlled by §42-35-16. It may be well to point out as we did in *Lemoine* v. *Department of Mental Health, Retardation, & Hospitals,* 113 R. I. 285, 288, 320 A.2d 611, 613 (1974), that the writ of certiorari brings up the record of the lower court for inspection and review on questions of law only and any ground for reversal must be found on the face of the record. It is also the rule in this state that where the court is reviewing the decision of a subordinate tribunal by way of certiorari, that review is limited to the allegations of error which appear in the petition for the writ. *A.T. & G., Inc.* v. *Zoning Bd. of Review,* 113 R. I. 458, 462, 322 A.2d 294, 296 (1974).

With respect to Mrs. Mason's injury, the Journal does not argue that the commission's findings of fact as affirmed by the Superior Court were erroneous. Therefore, we are bound by the commission's unchallenged findings that Mrs. Mason suffered a "whiplash" neck and back injury in early 1973, that she was wearing a Thomas Collar during her employment with the Journal, and that she suffered some pain and discomfort, before, during, and after her employment with the Journal. Therefore, the specific question presented to us by the Journal's

petition is whether a "whiplash" injury, caused by an automobile injury, resulting in the wearing of a Thomas Collar and causing some pain and discomfort is a "[p]hysical handicap" within the meaning of §28-5-6(H).

In support of the Superior Court's interpretation of §28-5-6(H), Mrs. Mason argues that nothing within §28-5-6(H) suggests that a whiplash injury from an automobile accident, resulting in the use of a soft cervical collar, is not included within the definition of a "physical handicap". In fact, by the terms of the statute itself, a "[p]hysical handicap" includes, "any physical disability" resulting from injury, "any degree of paralysis," or "physical reliance on * * * [a] remedial appliance or device." Mrs. Mason buttresses her argument by noting that §28-5-38 mandates that the provisions of the Fair Employment Practices Act be "construed liberally for the accomplishment of the purposes thereof" and by further noting that the declared policy of the Fair Employment Practices Act is " * * * to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their * * * physical handicap * * *." Section 28-5-3, as amended.[6]

We do not agree with Mrs. Mason's construction of §28-5-6(H). A literal reading of §28-5-6(H) does appear to declare that any physical disability caused by injury, no matter how slight, is a "physical handicap." However, it is a well-settled rule of statutory construction that this court will not undertake to read an enactment literally if

"General Laws 1956 (1968 Reenactment) §28-5-3, as amended reads as follows:

"Public policy.—It is hereby declared to be the public policy of this state to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their race or color, religion, sex, physical handicap, or country of ancestral origin, and to safeguard their right to obtain and hold employment without such discrimination."

to do so would result in attributing to the Legislature an intention that is contradictory of or inconsistent with the evident purposes of the Act. *Angel* v. *Murray*, 113 R. I. 482, 322 A.2d 630 (1974); *Rhode Island Consumers' Council* v. *Public Util. Comm'n*, 107 R. I. 284, 267 A.2d 404 (1970). We have consistently subscribed to the principle that a legislative enactment should be given what appears to be the meaning most consistent with its policy or obvious purposes. *Angel* v. *Murray, supra; Mason* v. *Bowerman Bros.*, 95 R. I. 425, 187 A.2d 772 (1963). After closely scrutinizing the provisions of the Fair Employment Practices Act, we conclude that the Legislature could not have intended the suggested literal interpretation, namely, that a person with any physical disability, no matter how slight, is entitled to protection under the Fair Employment Practices Act. The unreasonable and unintended result which such interpretation would foster is that persons with any medical problem whatsoever would be encouraged to seek relief from the commission.

In order to determine what class of persons are entitled to the protection of the Fair Employment Practices Act, we turn then to the specific language of §28-5-6(H). This section first defines a "[p]hysical handicap" in general language as "* * * any physical disability, [infirmity], malformation, or disfigurement which is caused by bodily injury, birth defect or illness * * *." However, this language is immediately limited by an enumeration of specific injuries, infirmities, or malformations which are intended to be "physical handicaps." This language may not be extended to include other injuries or infirmities which are different in kind from those enumerated unless it appears from the provisions of the Fair Employment Practices Act itself that the Legislature intended that the general language of the initial portion of §28-5-6(H) be immune from limitation by the subsequent enumera-

tion of a generic class of disabilities. This construction is in accord with the well-recognized principle that:

> " 'General and specific words in a statute which are associated together, and which are capable of an analogous meaning, take color from each other, so that the general words are restricted to a sense analogous to the less general. Under this rule, general terms in a statute may be regarded as limited by subsequent more specific terms.' " *Powers ex rel. Doyon* v. *Charron*, 86 R. I. 411, 417, 135 A.2d 829, 832 (1957), *citing* 50 Am.Jur., *Statutes* §249 p. 244.

This principle is not a positive rule of law but merely a rule of construction to be employed only in determining the meaning of an ambiguous statute or where a literal reading of the statute results in unreasonable or absurd consequences. As noted previously, the instant case is one where a literal interpretation would lead to unreasonable results which could not have been intended by the Legislature and, therefore, the application of the above principle of construction is perfectly proper.

The fact that the specific words are preceded by the words "include, but not be limited to" does not prevent the application of this principle. When such phrase has been used in antidiscrimination statutes it has been construed as a phrase of enlargement rather than a phrase of limitation. *Pennsylvania Human Relations Comm'n* v. *Alto-Reste Park Cemetery Ass'n*, 453 Pa. 124, 130-36, 306 A.2d 881, 885 (1973), *citing Zahorian* v. *Russell Fitt Real Estate Agency*, 62 N.J. 399, 411, 301 A.2d 754, 761 (1973). In the context of this statute the enlargement is applicable to the class of enumerated infirmities. That is, the phrase "include, but not be limited to" requires that the enumerated infirmities may not be construed as an exhaustive list of the "physical handicaps" entitled to the protection of the Fair Employment Practices Act. However, applying the principle of construction specified in

*Powers ex rel. Doyon* v. *Charron, supra,* before an un-enumerated infirmity may be construed as a "physical handicap", that infirmity must be similar in kind to those enumerated. A close scrutiny of the enumerated infirmities indicates to us that they have a common characteristic, namely, they are all serious injuries or impairments of more than a temporary nature.

Therefore, we hold that a "physical handicap" within the meaning of §28-5-6(H) must be a serious injury or impairment of more than a temporary nature. In the findings of the commission as affirmed by the Superior Court there is no indication that Mrs. Mason's injury was more than temporary in nature and the finding that "[s]he suffered some pain and discomfort before, during, and after her employment" leads us to conclude that Mrs. Mason's injury was not serious. Therefore, we conclude that Mrs. Mason's "whiplash" injury was not a "physical handicap" within the meaning of §28-5-6(H).

We reiterate that in this case the Legislature has spoken on what constitutes a "[p]hysical handicap." If they had intended that the general term, "any physical dis-ability," be interpreted in its unrestricted sense, they would have made no mention of the enumerated class or physical disabilities which constitute physical handicaps. Disregard of the limiting effect of the enumerated dis-abilities would run contra to the well-recognized presumption that every word, sentence or provision of the statute was intended for some useful purpose and has some force and effect. *Merciol* v. *New England Tel. & Tel. Co.,* 110 R. I. 149, 153, 290 A.2d 907, 910 (1972).

There remains the question of whether the Superior Court justice erred in setting aside the award of attorneys' fees made by the Rhode Island Commission for Human Rights.

The trial justice in his decision stated that the right to

recover attorneys' fees does not generally exist at common law, 20 Am.Jur.2d *Costs* §72 and without specific statutory authority or contracted liability, attorneys' fees may not be taxed. *Waite* v. *Board of Review of Dep't of Employment Sec.,* 108 R. I. 177, 273 A.2d 670 (1971).

Mrs. Mason argues before us that in view of the mandate that the Fair Employment Practices Act be liberally construed together with the broad powers of the commission to issue remedial orders, and because of the public interest involved, we should interpret the statute so as to confer sufficient authority for the commission to award attorneys' fees. She urges in the alternative that we adopt the so-called "private attorney-general" theory as a basis for awarding attorneys' fees. The rationale of such theory is that in a case where a plaintiff brings a suit to enforce a public policy thereby benefiting the public at large such a plaintiff is said to act as a private attorney-general and that an award of attorneys' fees in such a case is deemed essential.

It is clear that §28-5-24 does not expressly authorize the Rhode Island Commission for Human Rights to award attorneys' fees. The commission therefore lacks specific statutory authority necessary for an award of attorneys' fees. *Waite* v. *Board of Review of Dep't of Employment Sec., supra at* 178, 273 A.2d at 670.

The use of the private attorney-general theory as a basis for awarding attorneys' fees has been rejected by the United States Supreme Court in *Alyeska Pipeline Serv. Co.* v. *The Wilderness Soc'y,* 421 U. S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Mrs. Mason attempts to distinguish the case by pointing out that Congress had decided by statute that attorneys' fees should not be awarded to winning parties and that the Court had decided the case on that basis

and, therefore, did not consider the value of the private attorney-general theory.

The Court in *Alyeska* did state that:

"* * * courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases." *Id.* at 269, 95 S.Ct. at 1627, 44 L.Ed.2d at 159-60.

Thus, the United States Supreme Court has reasoned that when a Congress has explictly provided for the award of attorneys' fees in some cases but not in others, it is not for the courts to award attorneys' fees on a "private attorney-general" theory in those cases where the legislative body has not specifically provided for the award of attorneys' fees.

We apply the rationale in *Alyeska* to the case under consideration. The Rhode Island Legislature has expressly provided for the awarding of attorneys' fees in some cases.[7] The Legislature has not enacted any such provision for the award of attorneys' fees under the Fair Employment Practices Act. The award of such fees is a prerogative of the Legislature and not this court. The trial justice was correct in reversing the commission's award of attorneys' fees.

In Miscellaneous Petition No. 75-85, the petition for certiorari is granted, the judgment entered in the Superior Court is quashed and the papers are ordered returned to the Superior Court with our decision duly endorsed thereon.

---

[7]General Laws 1956 (1969 Reenactment) §34-37-5(L) (Fair Housing Practices Act); §39-6-14 (Action against Railroads); §27-16-13 (Actions against Insurers); §6A-7-601 (Action by Bailees).

In Miscellaneous Petition No. 75-91, the petition for certiorari is denied, the writ heretofore issued is quashed and the records are remanded to the Superior Court.

*Richard M. Borod, Edwards & Angell, Bloom, Deutsch, Rosenwald, Weintraub & Witkin, Robert P. Weintraub* (for Providence Journal), *Abedon, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler* (for Jacqueline Mason), for petitioner.

*Julius C. Michaelson,* Attorney General, (for Rhode Island Commission for Human Rights), *Gregory L. Benik,* Special Assistant Attorney General, for respondent.