DECISION
This is an appeal from a decision issued December 2, 1994 by the Cumberland Zoning Board of Review (the Board). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
Facts/Travel
The matter currently before the court involves an application of the House of Compassion, Inc. (HOC) to operate a facility for persons suffering from Acquired Immune Deficiency Syndrome (AIDS). H.O.C. is a non-profit corporation, the stated purpose of which is to "care for the terminally ill in a community setting." Tr. at 49.
The HOC planned to operate the facility at a site located at 2510 Mendon Road in Cumberland, Rhode Island. The facility was to be limited to four residents. Tr. at 55. Neither medical services nor meals were to be provided. Tr. at 60. Residents were to be treated medically by the Visiting Nurses Association. Tr. at 56.
While it is unclear from the record exactly when HOC decided to initiate the procedures necessary to open the facility, some residents of the town of Cumberland learned of the proposed use in the months of July and August of 1994. On August 3, 1994, in response to concerns voiced by numerous residents, the Cumberland Town Council held an informational meeting on the issue. Tr. at 28. The HOC's director, Colleen Scanlan, spoke at the meeting, outlining the proposed use of the property.
On or about August 17, 1994, HOC contacted Roger Pierce, the Building and Zoning official for the Town of Cumberland. The purpose of this contact was to request a certificate of occupancy for the residence. By letter dated August 22, 1994, Mr. Pierce responded to this request, stating that the facility met the definition of a "community residence" as set forth under the Cumberland Zoning Ordinance and the state enabling act and that no certificate of occupancy was required.
In late August or early September of 1994, at least one Cumberland resident, David Goodrich, began distributing fliers voicing concerns with the proposed use. Tr. at 34-35. On September 2, 1994, the Providence Journal printed an article discussing Mr. Pierce's approval of the facility.
On September 12, 1994, Attorney Francis Gaschen wrote to Mr. Pierce requesting a "ruling on the issues" presented by HOC's proposed use of the property. In his letter, Attorney Gaschen stated that he "represent[ed] certain individuals residing in the area of 2510 Mendon Road." Thomas Hefner, Solicitor for the Town of Cumberland, responded to Attorney Gaschen's request by letter dated September 16, 1994. In his letter, Solicitor Hefner stated that the town's position was that HOC's proposed use was within the definition of a "community residence" as set forth in the town's zoning ordinance and state zoning law.
On October 6, 1994, the plaintiffs in the instant action filed an Application for an Appeal of a Decision by the Zoning Official with the Cumberland Zoning Board of Review ("Board"). David Goodrich was the named appellant, with Attorney Gaschen signing as "attorney for some abutters."
On November 9, 1994, the Board heard the appeal. Appellants presented testimony from both Mr. Goodrich and one Aurelio Serpa. The testimony of each focused on their respective status as abutters. Appellant's attorney also questioned Ms. Scanlan on the nature of HOC's proposed use. Finally, Mr. Pierce was questioned concerning both his involvement in the matter and his interpretation of the Cumberland Zoning Ordinance.
The HOC was also represented at hearing and presented testimony through both Ms. Scanlan and Mr. Pierce. In addition, HOC offered the testimony of Ms. Derwent Jean Riding, an expert in the area of land use planning. Ms. Riding testified as to her experience in drafting the Rhode Island Zoning Enabling legislation. Ms. Riding further testified that the drafters of the enabling legislation recognized that all types of permitted uses could not be delineated in the statute and therefore the framework set forth was designed to produce a broad definition of the term "community residence." Tr. at 84.
At the conclusion of the testimony, the Board voted to deny the appeal on the grounds that the proposed use was within the definition of "community residence" as set forth in both the Cumberland Zoning Ordinance and the state statute. The Board filed its decision to this effect on December 2, 1994. On December 22, 1994, the appellants filed this appeal with the Superior Court. The HOC moved to intervene on January 11, 1995 and that motion was granted on January 13, 1995.
Standard of Review
Superior Court review of a zoning board decision is governed by G.L. 1956 (1991 Reenactment) § 45-24-69(D) which provides:
 45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). On review, the Supreme Court examines the record to determine whether "competent evidence" supports the Superior Court judge's decision. R.J.E.P.Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).
ANALYSIS
The parties have raised a number of issues in arguing for and against the proposed use, each of which is addressed herein.[1]
I. Timelines of Appeal to Zoning Board
This matter was raised and argued at length during the hearing on this matter, with the Board eventually deciding to deny HOC's motion to dismiss. Tr. at 25. The relevant guidelines for resolution of the issue are contained in Art. 9, § 9(a) of the Cumberland Zoning Ordinance. That section provides, in relevant part:
 An appeal to the Board from a decision of any other zoning enforcement agency or officer . . . may be taken by an aggrieved party. Such appeal shall be taken within thirty (30) days of the date of the recording of the decision of the officer or agency, or within thirty (30) days of the time when the aggrieved party knew or should have known of the action or decision of such officer or agency. The appeal shall be commenced by filing an application with the Board, with a copy to the officer or agency from whom the appeal is taken, specifying the ground thereof. The officer or agency from whom the appeal is taken shall forthwith transmit to the Board all papers, including any transcript or audio tapes, constituting the record upon which the action appealed from was taken. Notice of the appeal shall also be transmitted to the Planning Board.
The appellants argue that Solicitor Hefner, as legal counsel to the town, effectively provided the only "action on decision" from which an appeal could be taken under this section. Appellants contend that this action was the Solicitor's letter of September 6, 1994.
The HOC contends that under section 9(a), the appeal period began to run when the appellants learned of the proposed use. The HOC argues that this occurred either at the August 3, 1994 Town Council meeting, after the August 22, 1994 letter of the building official was issued, or when the decision was reported in the Providence Journal article of September 3, 1994.[2]
The Board did not find that the appellants were chargeable with notice before September 6, 1994 and thus the October 6, 1994 appeal to the Board was timely. Under G.L. 1956 (1991 Reenactment) § 45-24-54,[3] a party may seek information in a manner similar to that used by appellants. Although appellants do not cite the statute specifically, it appears to provide support for their contention. The statute provides that in order to "provide guidance or clarification," the zoning enforcement officer "shall, upon written request, issue a zoning certificate or provide information to a requesting party." Id. Any party may make such a request. Chase, Primer on the New Zoning EnablingAct, 26 Suffolk U.L. Rev. 333, 355 (1992).
The decision of the Board denying HOC's motion to dismiss was within its statutory authority for Attorney Gaschen's letter appears, in substance, to be a request under § 45-24-54. As a result, the decision issued by the Town Solicitor is properly appealable. See Chase, supra. Since that decision was appealed within thirty days, it is timely.
II. Justiciability of Appeal to Zoning Board
In contrast to a request for clarification under G.L. § 45-24-54, only an aggrieved party may appeal to the Board or to the Superior Court. See Cumberland Zoning Ordinance, Art. 9, § 9(a); G.L. 1956 (1991 Reenactment) § 45-24-69. Under both the ordinance and the statute an aggrieved party is defined as
 (a) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of city or town; or
 (b) Anyone requiring notice pursuant to this chapter.
The requirement that a party be aggrieved exists to ensure concrete adverseness" between the parties. Blackstone ValleyChamber of Commerce v. Public Utilities Com'n., 452 A.2d 931, 932-33 (R.I. 1982). It is well settled that parties with only generalized grievances lack standing. See Schlesinger v.Reservists to Stop the War, 418 U.S. 208, 220 (1974) (standing to sue may not be predicated upon an interest which is held in common by all members of the public); see also Primerica v.Planning and Zoning Com'n of Greenwich, 558 A.2d 646, 650 (Conn. 1989) (contrasting meaning of "aggrievement" with mere generalized grievance for purposes of contesting zoning board action).
As the HOC points out, appellant Goodrich has put forth no evidence to demonstrate that his property will be injured by the proposed use. The record of the hearing indicates that Goodrich has shown no more than a generalized grievance, that is, the fear that the proposed use will lower the value of his property. Goodrich has presented no evidence of any particularized injury, and as a result, he has no standing on appeal.
In contrast to Goodrich, appellant Serpa enjoys the status of an abutter and therefore injury to his property is presumed to be threatened. The controversy is live as to him and therefore any justiciability problems concerning Goodrich are effectively cured. The appeal is justiciable. See Marchetti v. Riccio,97 R.I. 468, 471-72, 199 A.2d 21, 23 (1964) (fact that one defendant was not properly a party did not invalidate suit); c.f. Powell v.McCormack, 395 U.S. 486, 496-97 (1969) (where one of several issues becomes moot during suit, remaining live issues supply case or controversy requirement).
III. Failure of Appellants to Seek a Cease and Desist Order
As an outgrowth of the timeliness issue, HOC argues that appellants' failure to obtain or even seek a cease and desist order precludes any appeal to the Zoning Board. The HOC relies on G.L. 1956 (1991 Reenactment) § 45-24-60 for the proposition that the appellants must seek such an order prior to appealing to the Board. The Board denied HOC's motion to dismiss on this issue.
Section 45-24-60 contains two subsections, the first of which sets forth a monetary penalty for violation of either the zoning ordinance or action of any other agency or officer charged in the ordinance with enforcement of its provisions. The second subsection provides authority for a "city or town" to cause suit to be brought to restrain the violation of or to compel compliance with zoning ordinance provisions. There is no mention of this statute providing a private right of action, much less mandating one. In fact, even the reference to the town is permissive, rather than mandatory. For these reasons, the court declines to adopt HOC's argument with respect to G.L. § 45-24-60, and denial of the motion to dismiss was not an error of law.
IV. Requirement that Certificate of Occupancy be issued
The appellants contend that the building official was required to issue a Certificate of Occupancy (CO) prior to HOC making use of the property. Appellants spend several pages in their brief arguing what is at best a collateral matter with no purpose other than obfuscation of the real issues on appeal. While the Board did not address this issue specifically in its decision, its ultimate conclusion manifests its rejection of this argument. Nonetheless, the issue is addressed here for the sake of providing an exhaustive review.
Article 9, § 3 requires a CO in six different situations, only one of which could possibly be considered relevant here. Section 3(b) requires a CO where there has been a "[c]hange in use of an existing building to a different use." The Board heard testimony from the building official that he did not view a change from a single family residence to a community residence as requiring a CO. Tr. at 71. Appellants argue that this conclusion is improper in light of Article 9, § 3.
The Board's decision was not clearly erroneous. The property was not altered in any manner. It was merely changed from one permitted use to another within one zone. This change does not require that a CO be issued. The ruling of the Board on this issue is affirmed.
V. Controlling Definition of Community Residence
The focus of this controversy concerns whether HOC's proposed use of the property at 2510 Mendon Road in Cumberland falls within the definition of a "community residence."
G.L. 1956 (1991 Reenactment) § 45-24-31(15) (1994 Cum. Supp.) provides the following definition.
 (15) Community Residence. A home or residential facility where children and/or adults reside in a family setting and may or may not receive supervised care. This shall not include halfway houses or substance abuse treatment facilities. This shall include, but be limited, to the following (Emphasis supplied.):
 (a) Whenever six (6) or fewer retarded children or adults reside in any type of residence in the community, as licensed by the state pursuant to chapter 24 of title 40.01. All requirements pertaining to local zoning are waived for these community residences;
 (b) A group home providing care or supervision, or both, to not more than eight (8) mentally disabled or mentally handicapped or physically handicapped persons, and licensed by the state pursuant to chapter 24 of title 40.1;
 (c) A residence for children providing care or supervision, or both, to not more than eight (8) children including those of the care giver and licensed by the state pursuant to chapter 72.1 of title 42;
 (d) A community transitional residence providing care or assistance, or both, to no more than six (6) unrelated persons or no more than three (3) families, not to exceed a total of eight (8) persons, requiring temporary financial assistance, and/or to persons who are victims of crimes, abuse, or neglect, and who are expected to reside in that residence not less than sixty (60) days nor more than two (2) years. Residents will have access to and use of all common areas, including eating areas and living rooms, and will receive appropriate social services for the purpose of fostering independence, self-sufficiency, and eventual transition to a permanent living situation.
Art. 10, § 32 of the Cumberland Zoning Ordinance provides a definition of "community residence that is substantially identical to the above definition.
At issue is the language of Appendix A of the Ordinance. This appendix provides a list of code numbers to be used in conjunction with the use regulations contained in Articles 3 and 4 of the Zoning Ordinance. The appendix does not purport to provide definitions for terms used in the ordinance. Under § 15.2 of Appendix A, the definition contained in both the G.L. § 45-24-31(15) and Art. 10, § 32 of the Zoning Ordinance is repeated, with one exception. The language in the appendix does not contain the words "but shall not be limited to" in the third sentence.
The appellants note that Art. 10, § 32 states that the terms defined therein shall have the meanings set forth in the section "unless a contrary meaning is specifically prescribed." Appellants then argue that the deletion of the words "but not be limited to" in Appendix A prescribe a contrary meaning of the term "community residence." Appellants conclude that because the definition set forth in Appendix A is controlling and that definition limits the term to four specific uses, any uses not falling within the four parameters cannot qualify as a "community residence."
It is well settled that while cities and towns possess the power to implement zoning ordinances, those ordinances must not contradict the provisions contained in the state enabling act.See Mongony v. Bevilacqua, 432 A.2d 661, 664 (R.I. 1981) (state law of general character and statewide application is paramount to local or municipal ordinances inconsistent therewith). Section45-24-31 also commands that "the words and phrases herein defined shall be controlling in all local ordinances created hereunder." Moreover, G.L. § 45-24-35 provides that words or terms used in any zoning ordinance, whether or not defined in the ordinance, that are substantially similar to words or terms defined in § 45-24-31
shall be construed according to the definitions provided in this chapter." Therefore even if the Town of Cumberland desired to define the term more narrowly then the state enabling legislation, any attempt to do so would be ineffectual.
The circumstances present here suggest that the town had no such desire, but rather that the definition contained in Appendix A represents the result of a legislative oversight. The definitions provided in Art. 10, § 32 and Appendix A, § 15.2 should be read on pari materia and any palpable inconsistencies rectified. The court has the power to insert words into a statute where it is plainly evident from the statute itself that the Legislature intended that the statute contain such provisions.See New England Die Co. v. General Products Co., 92 R.I. 292, 298-99, 168 A.2d 150, 154 (1961); see also 73 Am. Jur.2d Statutes
§ 203 (words and phrases may be supplied by a court when interpreting a statute where omissions are palpable and plainly indicated by the context).
Furthermore, had the town actually intended to limit the definition to the four examples listed, it is doubtful that the word include would have been used. That word is generally employed as a term of enlargement, rather than one of limitation.See Rhode Island Hosp. Trust Co. v. Votolato, 102 R.I. 467, 484,231 A.2d 491, 500 (1967). Had the town truly wished to limit the definition, further language would have been used to express that intention. Compare Powers ex. rel. Doyan v. Charron, 86 R.I. 411, 417-18, 135 A.2d 829, 832 (1957) (where charter provision provided for abolition of offices including specifically" certain positions, provision would be interpreted to abolish only those offices listed).
The court thus concludes that the language of Appendix A of the Cumberland Zoning Ordinance is not controlling in this matter and that the Board acted properly in analyzing the issue presented under the definition set forth in Art. 10, § 32 of the Ordinance.
VI. Review of Board's Decision
Upon review of the hearing transcript and the evidence before the Board in this matter, the court is not convinced that the Board's decision was clearly erroneous. The Board heard testimony from Ms. Scanlan concerning HOC's proposed use of the property. The Board then heard testimony from Mr. Pierce and Ms. Riding concerning the uses which qualify as a community residence. The appellants presented no evidence to contradict this testimony, choosing to argue that the Board was constrained to apply the definition contained in Appendix A of the Ordinance. As that argument has previously been resolved in the Board's favor, the court declines to disturb the Board's findings under the definition it applied.
VII. Request for Sanctions
The HOC seeks sanctions against appellants on the grounds that appellant Goodrich lacks standing to appeal the Board's decision. Notwithstanding the determination that Goodrich does in fact lack standing, the court declines to impose sanctions. In the absence of any prejudice to the HOC (given appellant Serpa's standing), however, sanctions are unwarranted here.
CONCLUSION
After review of the entire record in this matter, the court finds that the decision of the Board is supported by substantial evidence and was not made in excess of statutory authority, upon unlawful procedure or affected by error of law. For the reasons stated herein, the December 2, 1994 decision of the Zoning Board of Review of the Town of Cumberland is affirmed. Counsel shall prepare the appropriate order for entry.
[1] Although the Cumberland Zoning Board of Review is named as the appellee in this matter, only appellants and the HOC submitted briefs on appeal. The Board filed a brief adopting HOC's arguments concerning the substantive decision of the Board and adopting appellants' position concerning procedural issues on appeal.
[2] The HOC also argues in its brief that the appellants were apprised of the contents of Mr. Pierce's August 22, 1994 letter when Attorney Gaschen reviewed Mr. Pierce's file prior to drafting a letter on September 12, 1994. This argument provides little support for HOC's position in light of the fact that no evidence was presented as to the exact date that Attorney Gaschen reviewed the file. Presumably, notice obtained as a result of a file review undertaken after September 6, 1994 would not make the appeal untimely.
[3] Article 9, § 1 of the Cumberland Zoning Ordinance tracks this language.