[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this Court are plaintiffs' request for declaratory and injunctive relief. Plaintiffs are requesting this Court to declare that Pawtucket's City Ordinance 2249 is inconsistent with and in violation of Sections 4-506(11) and 1-102 of Pawtucket's Home Rule Charter. In addition, the plaintiffs request that this Court enter a permanent injunction enjoining and restraining the implementation of Ordinance 2249. Jurisdiction in this Court to render a declaratory judgment is pursuant to R.I.G.L. 1956 (1985 Reenactment) § 9-30-1.
FACTS/ISSUES
The Pawtucket City Council granted first passage to Ordinance 2249, entitled "Prompt Pay Ordinance," on March 26, 1992. Ordinance 2249 in part directs the Finance Department, when presented with an invoice for payment, to pay those invoices within forty-five (45) days. If the City fails to make payment within this time period, Ordinance 2249 imposes an interest penalty that the city must pay to the contractor. The ordinance, however does not require payment if the goods or services are unacceptable, in violation of the contract, or if there are insufficient monies available to pay the obligation. Second passage of the Ordinance occurred on April 8, 1992. The Council overcame a mayoral veto and passed the Ordinance into law on April 22, 1992. On May 22, 1992 plaintiffs filed this suit contending that Ordinance 2249 is in violation of Pawtucket's Home Rule Charter because it is an attempt by the City Council to act in an area that is under the exclusive control of the Mayor. The defendants respond by asserting that Ordinance 2249 does not circumvent or undermine the executive control. Rather, according to defendants, Ordinance 2249 preserves all administrative discretion in regard to the making of contracts.
Statutory Construction
When interpreting the provisions of a city charter, the rules of statutory construction apply. Providence Teachers L. 958 v.Napolitano, 554 A.2d 641, 643 (R.I. 1989). City ordinances that are inconsistent with the City Charter are illegal and inferior to the provisions of the City Charter. Borromeo v. Personnel Bd.of Town of Bristol, 117 R.I. 382, 385, 367 A.2d 711, 713 (1977). The Charter must be read in its entirety to ascertain the legislative intent. City of Warwick v. Almac's, Inc.,442 A.2d 1265, 1273 (R.I. 1982). The purpose of Pawtucket's Home Rule Charter is to establish an orderly and efficient administration of the affairs of the city. Durkin v. Personnel Bd. ofPawtucket, 83 R.I. 353, 356, 116 A.2d 456, 457 (1956). Such a purpose is accomplished in part by placing the financial and budgetary responsibility on both the legislative and executive branches of the City of Pawtucket.
The Pawtucket Executive v. Legislative Branches
Pawtucket's City Charter ordains that "[t]he legislative power of the city . . . shall be exclusively vested in and exercised by a council, except only as limited by the provisions of this Charter." § 1-101. The Charter also provides that "[t]he executive and administrative power of the city shall be exclusively vested in and exercised by a mayor." § 1-102. More specifically, Pawtucket's City Council under the Charter has the primary responsibility of passing an annual operating budget ordinance. § 2-301(1). The mayor and administrative officers have the duty of implementing the budget as passed by the Council.See generally, §§ 4-100-507. While the mayor is required to submit a proposed budget to the council (§ 4-101(2)), the council is not bound to follow the mayor's proposal. § 2-301. Therefore, it is ultimately the City Council that "make[s] appropriations to the council, the mayor, and all department, boards, commissions . . . and for all other items which are to be met out of the revenue of the city" for the upcoming year. § 2-301(2).
Once the annual budget has been passed, it is the duty of the Executive Branch to administer the budget. According to the City Charter, "the Director of Finance, with the approval of the mayor, shall set up a system of quarterly allotments, consistent with the needs of the various departments." § 4-502. Under the Charter, the Director is granted the power to investigate and inquire into the city's financial needs and expenditures in order to project accurately the department's quarterly allotments. § 4-501(3). While the mayor is granted certain privileges, i.e. approving the quarterly allotments, § 4-502; giving permission to encumber appropriated funds over the set allotments, § 4-506(11), he is constrained to a large degree by the annual operating budget passed by the City Council.
The plaintiffs contend that Pawtucket's Home Rule Charter vests broad powers on the mayor thus creating a "clearly dominant executive branch." A close reading of the Charter, however, does not support this contention. While it is true that "[t]he executive and administrative power of the city shall be exclusively vested in . . . a mayor," § 1-102, an inherent check on this executive power is the Council's control over the budget. The mayor is free to administer the budget; however, there are various checks throughout the Charter that act as guidelines for the Mayor.
The Pawtucket City Council's Checks on the Executive Branch
The first check is the City Council's autonomy in determining the upcoming annual operating budget. As already noted, "[i]t shall be the duty of the council . . . to adopt the annual operating budget ordinance." § 2-301(1). Even though the mayor submits a detailed proposal to the City Council "[t]he mayor's estimates of receipts for the ensuring fiscal year and of surplus or deficit . . . for the current fiscal year may be altered by the council." § 2-301(3)
Still another check arises after the mayor has entered into a contract. The City Charter requires the Accounting Division to "examine all contracts, purchase orders, and other documents by which the city incurs financial obligations to ascertain . . . that there will be such balances available when such obligations become due and payable." § 4-507(3). These appropriations, once again, have been initially allocated by the City Council in the annual budget.
The City Council is also involved in the monthly surveillance of the city finances. The City Charter requires the Accounting Division to "prepare monthly reports of all receipts and expenditures of the city and all appropriations and the charges and encumbrances thereto and submit the same to the Mayor, [and] the Council." § 4-507(5). This keeps the City Council informed of the monthly financial status of the city.
Furthermore, the Charter ordains that the Division of Collection and Disbursements may "[m]ake payments of money only pursuant to authorization contained in ordinances." § 4-506(11). Such ordinances can come only from the City Council. Accordingly, Pawtucket's City Charter grants the City Council a dominant role in the establishment and maintenance of the city's finances. The mayor's role as administrator is subject to checks by the Council as ordained by the Charter.
The Mayor's Freedom of Contract Argument
The plaintiffs also contend that paragraph 10 of Ordinances 2249, entitled "Chapter to Control — Contractual Waiver Void," violates the Home Rule Charter by interfering with the Mayor's freedom to contract. Once again, in reading the Charter in its entirety, it is clear that Ordinance 2249 is consistent with the Council's duties under the City Charter.
If the mayor were permitted to waive the Ordinance's interest requirement contractually, then Ordinance 2249 would essentially be circumvented. This, in essence, would result in the Mayor violating the provisions of the Home Rule Charter by avoiding a valid city ordinance.
Therefore, while it may appear after a cursory reading of paragraph 10 that the Council is interfering with the Mayor's contractual duties, in application, Paragraph 10 is clearly consistent with the Councils' duties under the Home Rule Charter. The Court should not construe a statute to create an absurd or unreasonable result. Blue Cross of R.I. v. Cannon, 589 F. Supp. 1483, 1491 (1984). Rather, it must be read to convey "a definite and sensible meaning that does not contradict an evident legislative purpose." Id.
Conclusion
Given the overall scheme of Pawtucket's City Charter, the Court finds that Ordinance 2249 is entirely consistent with the Charter. Ordinance 2249 does not attempt to interfere with the mayor's rights and duties under the Charter. The ordinance leaves the Mayor free to enter into contracts as he sees fit. However, it does not allow him to break those same contracts at his convenience. The ordinance is simply requiring the Mayor to adhere to the city's contractual obligations as entered into by the mayor himself. This Ordinance is an attempt to ensure that the money appropriated by the City Council reaches its intended destination when it is owed. It is the mayor, by virtue of the charter and in practice, who has obligated the city through the contracts. The Council, through Ordinance 2249, is attempting to ensure that these obligations are met on time. Given the extensive control that the Charter grants the Council over the city's finances, Ordinance 2249 is consistent with and not violative of the City of Pawtucket's Home Rule Charter.
Accordingly, plaintiffs' prayer for injunctive relief is denied and Ordinance 2249 is declared to be valid and not in violation of the Home Rule Charter. The Court additionally grants defendant, Regency Building Engineering Company's motion to dismiss the complaint against it based on plaintiffs failure to state a claim of relief against said defendant. Furthermore, the Court finds that plaintiffs have failed to state a claim of relief against defendants Crown Automotive Distributors Ltd., DARE, Inc., Todesca Forte, Inc., Ralph Geiselman Plumbing, Rhode Island Air Systems, Inc. and Warren Tire, Inc. (vendors). Accordingly, the court sue sponte orders that said vendors be dropped pursuant to R.C.P. 21.
A judgment shall be presented within seventy-two (72) hours consistent with this decision.