DECISION
This is an appeal from a decision of the Rhode Island Department of Business Regulation (DBR). The appellant, M.C. Woonsocket, Inc. (M.C. Woonsocket), is appealing the DBR's February 10, 1997 decision and order essentially revoking its Class A license allowing for the retail sale of alcoholic beverages at the business premises, 537 Elm Street, Woonsocket. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
The appellant, M.C. Woonsocket d/b/a Brooks Pharmacy #342, holds both Class A and Class E alcoholic beverage licenses transferred to it by the authority of the Woonsocket City Council sitting as the Board of License Commissioners from Rite Aid of Rhode Island, Inc. With these licenses, M.C. Woonsocket operates a business establishment at 537 Elm Street, Woonsocket, at which the retail purchase of alcoholic beverages is available to its customers.
R.J. Hill Liquors, Inc. (Hill) and Warehouse Liquors, Inc. (Warehouse) hold Class A licenses in Woonsocket. Both operate liquor stores in that municipality. Subsequent to the aforementioned transfer, Hill and Warehouse filed a complaint with the DBR alleging that the transfer of the licenses to M.C. Woonsocket violated G.L. 1956 § 3-5-11. The parties contended that the transfer violated this statute, for it had resulted in the creation of a chain store.
On November 19, 1996, the DBR conducted a hearing on the complaint. The parties and the City of Woonsocket were present and represented by counsel. Hill and Warehouse argued that the license transfer violated the chain store provision of G.L. 1956 § 3-5-11.
To substantiate its complaint, Hill introduced several pieces of evidence at the hearing. Exhibit 1 is the September 24, 1996 license application of M.C. Woonsocket d/b/a Brooks Pharmacy #342 for an A and E license application to be located at 537 Elm Street, Woonsocket. Michel Coutu, a resident of 8 Tamarack Drive, East Greenwich, is stated to be the president, sole director and sole board member of M.C. Woonsocket. Additionally, M.C. Woonsocket is listed as the sole stockholder on the application. Further, the application inquires as to whether the "[a]pplicant or any of its officers, Board Members or Stockholders are interested directly or indirectly, as principle or associate, or in any manner whatsoever, in any retail license issued under Chapter 3-7 of the General Laws of Rhode Island, 1956, as amended? . . ." M.C. Woonsocket responded, in part, that it "is a wholly owned subsidiary of Jean Coutu Group, (PJC) USA, Inc.," 50 Service Avenue, Warwick, Rhode Island.
Several A and E license renewal applications filed in the City of Cranston comprised Exhibit 2 offered by Hill. The applicant on these applications is "P.J.C. of Cranston, Inc., d/b/a Brooks Drug #35," 1764 Broad Street, Cranston. Again, Michel Coutu, 8 Tamarack Drive, East Greenwich, is listed as the president, sole director and sole board member. Jean Coutu Group (PJC) USA, Inc., 50 Service Avenue, Warwick, Rhode Island is listed as the sole stockholder.
The record also contains the testimony of Kristine Milette, daughter of Raymond Lambert, the principal owner of Hill. Milette testified that on October 22, 1996 she visited the Brooks store on Broad Street in Cranston and purchased a $10 gift certificate. She then proceeded to the Brooks store located on Elm Street in Woonsocket where she applied the aforementioned certificate toward the purchase of a bottle of alcohol. The alcohol, a greeting card, also purchased with the gift certificate, and the receipts for these transactions were entered as exhibits in the hearing.
In response, M.C. Woonsocket offered into evidence a series of license renewals for the 537 Elm Street location in Woonsocket. The renewals covered the years 1985 through 1994. Prior license renewals of a business entity at the same address, "The Prescription Center Inc.," are also part of the record. Counsel for M.C. Woonsocket examined Raymond Lambert, the owner of Hill. Lambert testified that, upon learning of what he felt to be a chain store at the premises at issue, he formally complained to the Woonsocket City Council and subsequently, the DBR.
On February 10, 1997, the DBR issued its decision ordering M.C. Woonsocket to cease the sale of alcohol under a Class A license. The DBR noted that M.C. Woonsocket retained the ability to restructure itself, permissibly and solely, as a Class E drugstore subject to the approval of the DBR. The instant appeal followed.
 Standard of Review
The review of a decision of the Department of Business Regulation by this Court is controlled by R.I.G.L § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, etal. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 Chain Store
M.C. Woonsocket argues the "primary focus" of this administrative appeal is the DBR's interpretation of the "chain store" statute and the application of such interpretation to the M.C. Woonsocket license transfer. A statute must be considered in its entirety and given a meaning "most consistent with its policies or obvious purposes." City of Warwick v. Almac's. Inc.,442 A.2d 1265, 1272 (R.I. 1982)(citation omitted). Section 3-5-11
of the Rhode Island General Laws reads:
 3-5-11. Licensing of chain stores. — Licenses, except retailer's Class E, Class B, Class B-H, Class B-L, Class B-M, and Class B-V licenses, authorized by this title shall not hereafter be granted, issued or transferred to or for the use of any chain store organization, which term shall mean any chain of retail or wholesale business or business organizations including without limitation grocery stores, markets, department stores, and convenience stores, as well as retailers of alcoholic beverages, and which includes chains in which one or more stores are located outside of the state of Rhode Island.
 What is a chain store organization is hereby declared to be a question of fact, and the department is empowered to determine finally whether any applicant for the issuance, grant or transfer of a license is acting for or on behalf of a chain store organization or a store unit of a chain store organization thereof.
Pursuant to § 3-5-11, whether a chain store organization exists is a question of fact. Furthermore, the statute specifically empowers the DBR to determine whether an applicant is acting for or on behalf of a chain store organization unit. Such a factual determination by the DBR will not be overturned by this Court unless there is no competent evidence in support of it in the record. Bunch v. Bd. of Rev., R.I. Dept. of Emp.,690 A.2d 335, 337 (R.I. 1997) (citation omitted).
The term chain store is defined broadly by the statute. A plain reading of the statute displays the drafters' intent to allow the facts of a particular application, as presented to and determined by the DBR, to reveal such an entity. See C JJewelry Co., Inc. v. Dept. of Employment, 702 A.2d 384, 386 (R.I. 1997). The legislature's delegation of this question of fact to the DBR effectuates the statute's obvious purpose to allow the DBR to regulate commercial activity in the state. City ofWarwick, 442 A.2d at 1272.
 Findings of the Board
In considering the application, the Board had before it evidence of certified copies of City of Woonsocket and City of Cranston A and E license applications and/or renewals. (R. at 25-26.) These applications evidenced the owner of the corporate entities, M.C. Woonsocket, Inc. and P.J.C. of Cranston, Inc., to be Jean Coutu Group, (PJC) USA, Inc. (Coutu). This showing of common ownership was unrebutted by M.C. Woonsocket. The Board applied this evidence in determining that Coutu "clearly has a controlling interest in two Class A-E stores." (Decision at 7.)
Additionally, the DBR heard testimony concerning the gift certificate purchase at the Cranston store and certificate redemption at the Woonsocket store as evidence of the commingling of revenue. The DBR termed this practice a "typical, well-recognized chain store arrangement." (Decision at 7.)
A review of the record demonstrates that the DBR's findings of fact and conclusions of law were more than amply supported by the credible evidence of the record. Strafach v. Durfee,635 A.2d 277 (R.I. 1993). The DBR determined the ingredients of common ownership of two stores and the commingling of revenue between those stores to be conclusive as to the existence of a chain store "under any common meaning of that term." (Decision at 7.) This question of fact, which was determined by the DBR pursuant to its statutory authority, will not now be disturbed by this Court. See Rocha v. State Pub. Utils. Comm'n, 694 A.2d 722 (R.I. 1997)
Upon review of the entire record, this Court finds that the decision of the DBR is supported by reliable, substantive and probative evidence, and there is no violation of constitutional or statutory provisions. The Court further finds that the DBR did not act in excess of its authority and its decision is neither clearly erroneous in view of the record, nor is it arbitrary or capricious. Substantial rights of MC Woonsocket have not been prejudiced. Accordingly, the decision of the DBR is affirmed.
Counsel shall submit the appropriate judgment for entry.